Deborah HERVEY, Respondent,

v.

**MISSOURI DEPARTMENT OF
CORRECTIONS, Appellant.**

No. SC 92145.

Supreme Court of Missouri,
En Banc.

Aug. 14, 2012.

General Counsel Ronald Holliger, James R. Ward and Julianne O. Germinder, Attorney General's Office, for Appellant.

Anthony L. DeWitt, Edward D. Robertson Jr. and Mary Doerhoff Winter of Bartimus, Frickleton, Robertson & Gorny PC, Jefferson City, and David A. Lunceford of The Lunceford Law Firm, Lee's Summit, for Hervey.

PATRICIA BRECKENRIDGE, Judge.

The Missouri Department of Corrections (department) appeals the trial court's judgment in favor of Deborah Hervey on her claim of disability discrimination under the Missouri Human Rights Act (MHRA). On appeal, the department claims that the trial court erred in overruling its objection to Ms. Hervey's verdict director because it did not include an essential element of her discrimination claim and erred in calculating punitive damages under section 510.265.[1] After opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. Because the verdict-directing instruction did not require the jury to find an essential element of Ms. Hervey's disability claim, the judgment of the trial court is reversed, and the cause is remanded.

### Facts and Procedural Background

Ms. Hervey worked as a probation officer for the department from 1983 to 1986 and from 2002 to 2005. She began her third tenure as a probation officer in 2007. On her first day back at work, she notified the department that she had a "mental disorder diagnosis" and that she may re-

---

1. All statutory references are to RSMo Supp. 2011, unless otherwise indicated.

quire accommodations as a result. At that time and on other occasions, Ms. Hervey requested accommodations for her claimed disability. Ms. Hervey received some accommodations but not others. For example, she was assigned a mentor and had the ability to play music in her workplace and take frequent breaks. However, she did not receive accommodation when she asked to work the 8:30 a.m. to 5 p.m. shift rather than the 8 a.m. to 4:30 p.m. shift or when she asked for use of an available private office rather than a cubicle. Also, despite her request for accommodation, she did not receive the three-week core training normally provided to all rehired employees who had more than a two-year break in employment or transfer to a different supervisor, even though another employee on probation recently had been granted such a transfer.

Consistent with the policy applicable to all returning employees that have not been employed by the department for more than two years, Ms. Hervey was required to complete a probationary period of nine months. At the end of the nine months, the department notified Ms. Hervey that she failed to complete her probationary period successfully and terminated her employment. The department claimed it found her work performance unsatisfactory because she was not carrying a full workload by the end of her probationary period and was late in filing reports.

Ms. Hervey brought suit, alleging that the department discriminated against her because of her disability and discharged her in retaliation for her complaints of discrimination. At the April 2010 trial, the department contested whether Ms. Hervey was legally disabled. The department challenged Ms. Hervey's disability throughout the presentation of evidence and in the closing argument.

Over the department's objection, the trial court submitted Ms. Hervey's proffered instruction No. 8—the verdict director for her claim for disability discrimination. The department offered an alternate verdict director that included a separately enumerated paragraph to require the jury to find specifically Ms. Hervey was disabled to find in her favor. The trial court refused the department's alternate instruction.

The jury returned a verdict for Ms. Hervey on her disability discrimination claim, awarded her $127,056 in actual damages and, after a bifurcated trial regarding punitive damages, awarded her $2.5 million in punitive damages.[2] After trial, Ms. Hervey filed a motion for attorney fees, expenses, costs, and other equitable relief, and the department filed a motion for judgment notwithstanding the verdict, requesting that punitive damages be reduced to the maximum amount authorized in section 510.265. The trial court sustained these motions, in part, and entered judgment for Ms. Hervey for $127,056 in actual damages, $36,288 for front pay and $97,382.50 attorney fees. Additionally, the trial court awarded Ms. Hervey punitive damages in the amount of $1,303,632.50. The department appeals.

On appeal, the department claims that the trial court erred in: (1) overruling the department's objection to Ms. Hervey's verdict-directing instruction because it did not explicitly require the jury to find that she suffered from a disability as required under the MHRA; and (2) awarding $1,303,632.50 in punitive damages because

2. The jury also found for Ms. Hervey on her claim of retaliation but awarded her $0 damages. Ms. Hervey abandoned her retaliation claim during the bifurcated punitive damage phase of the trial and does not raise any claims of error related to her retaliation claim.

the trial court improperly included attorney fees in the amount of the net judgment used to calculate punitive damages, which is contrary to the plain language of section 510.265.

### Verdict Director Must Submit Element of Disability

■ The department's first claim is that the trial court erred in submitting jury instruction No. 8, patterned after MAI 31.24, as the verdict director for Ms. Hervey's disability discrimination claim. The department asserts that submission of the instruction did not require the jury to find explicitly that Ms. Hervey was disabled, which is an element required by law for a claim under the MHRA.

Instruction No. 8 directed the jury as follows:

Your verdict must be for the Plaintiff if you believe:

First, Defendant discharged Plaintiff; and

Second, disability was a contributing factor in such discharge; and

Third, as a result of such conduct, Plaintiff sustained damage.

Instruction No. 8 did not require the jury to find expressly that Ms. Hervey was disabled. The trial court rejected the department's alternate instruction that required the jury to find in separate paragraphs that Ms. Hervey was disabled and that her disability was a contributing factor in her discharge. The department argues that the verdict director did not instruct the jury sufficiently and that the error relieved Ms. Hervey of her burden to prove all essential elements of her claim, thereby causing prejudice. The inquiry, then, is whether the trial court erred in submitting a verdict-directing instruction on a disability discrimination claim, patterned after MAI 31.24, which

does not require the jury to find explicitly that the plaintiff was legally disabled.

■ Whether a jury was instructed properly is a question of law this Court reviews *de novo*. *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). Review is conducted in the light most favorable to the record and, if the instruction is supported by any theory, its submission is proper. *Bach v. Winfield–Foley Fire Protection Dist.*, 257 S.W.3d 605, 608 (Mo. banc 2008). "Instructional errors are reversed only if the error resulted in prejudice that materially affects the merits of the action." *Id.* The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, resulting in prejudice to the party challenging the instruction. *Fleshner v. Pepose*, 304 S.W.3d 81, 90–91 (Mo. banc 2010).

■ Generally, "[w]henever Missouri Approved Instructions contains an instruction applicable to the facts of a case, such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). Rule 70.02 further provides that departure from an applicable MAI constitutes error, its prejudicial effect to be judicially determined. Rule 70.02(b)-(c). If a particular MAI does not state the substantive law accurately, it should not be given. *State v. Celis–Garcia*, 344 S.W.3d 150, 158 (Mo. banc 2011); *Spring v. Kansas City Area Transp. Auth.*, 873 S.W.2d 224, 226 (Mo. banc 1994) ("An instruction must be a correct statement of the law."); *Clark v. Missouri & Northern Arkansas R.R. Co.*, 157 S.W.3d 665, 672 (Mo.App. 2004) ("If an instruction following MAI conflicts with the substantive law, any court should decline to follow MAI.").

The source of the substantive law in this case is the statutes that govern an MHRA discrimination claim. Section 213.055, RSMo 2000, prohibits discrimination in the

employment context because of an individual's race, color, religion, national origin, sex, ancestry, age, or disability. The section provides:

1. It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability. . . .

Section 213.055, RSMo 2000. Section 213.111, RSMo 2000, creates a civil right of action for an employee against an employer for unlawful discrimination that allows an aggrieved employee to recover actual and punitive damages, court costs, and reasonable attorney fees.

 A claim of disability discrimination under section 213.111 of the MHRA requires a plaintiff to show that: (1) the plaintiff is legally disabled; (2) the plaintiff was discharged; and (3) the disability was a factor in the plaintiff's discharge. *See Medley v. Valentine Radford Commc'ns, Inc.*, 173 S.W.3d 315, 320–21 (Mo.App. 2005). Because "[t]he purpose of the verdicting directing instruction is to hypothesize propositions of fact to be found or rejected by the jury," the verdict directing instruction "must hypothesize the facts essential to the plaintiff's claim." *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 800 (Mo. banc 1997). Accordingly, the verdict director in a discrimination case must instruct the jury to find all three of these elements to find for the plaintiff. "Assuming a disputed fact is error." *Id.*

The verdict director for employment discrimination in MAI 31.24 does not submit as a separate hypothesized fact an essential element of an MHRA discrimination claim that the plaintiff is a member of a protected classification. Instead, MAI 31.24, as drafted, may presume that a plaintiff's status as a member of a protected classification is not in dispute. MAI 31.24 requires only a finding that:

Second, (*here insert one or more of the protected classifications supported by the evidence such as race, color, religion, national origin, sex, ancestry, age, or disability*) was a contributing factor in such (*here, repeat alleged discriminatory act, such as "failure to hire", "discharge", etc.*), and . . .

MAI 31.24. In many MHRA discrimination cases, it is not disputed that a plaintiff is a member of a protected class because the plaintiff's status as a member of a protected class is self-evident. For example, belonging to a particular race or sex often will be obvious and not subject to dispute. In these cases, inserting the appropriate protected classification where indicated in MAI 31.24 is sufficient to fulfill the elements of the claim and instruct the jury adequately.

 When a plaintiff's status as a member of a protected class is in dispute, however, the substantive law requires that the jury find, as an essential element of the plaintiff's claim, that the plaintiff is in fact a member of the protected class claimed. *See Medley*, 173 S.W.3d at 320. Despite the substantive law, MAI 31.24 does not provide the trial court with direction in situations in which the defense contests the plaintiff's status as a member of a protected class. Instead, it presumes that the plaintiff's status as a member of a protected class is uncontested, as is common for claims based on classifications such as race or sex.

Ms. Hervey disputes the department's claim of error by arguing that instruction No. 8 sufficiently complies with the substantive law because the second paragraph required the jury to find that she is disabled when it required a finding that "disability was a contributing factor in [her] discharge." This Court has rejected similar arguments. In *Spring v. Kansas City Area Transportation Authority*, the verdict-directing instruction submitted to the jury stated, in part:

First, defendant ... caused the bus to move forward and suddenly stop when he knew, or should have known, that plaintiff had not yet reached a place of safety in the bus.

873 S.W.2d 224, 226 (Mo. banc 1994). This Court found that the verdict-directing instruction "assumed, rather than hypothesized, that the plaintiff was not in a place of safety," which was an essential, disputed fact for the jury to determine before it considered the driver's knowledge or constructive knowledge. *Id.* at 227. The Court found that "[b]ecause the verdict directing instruction assumed and thereby removed from the jury the determination of a disputed fact, the error was prejudicial." *Id.*

Likewise, in *Lasky*, the question on appeal was whether the verdict-directing instructions assumed an essential fact. The verdict director for each plaintiff read, in part:

First, defendant knew or by using ordinary care should have know that plaintiff had come into contact with the cooling fluid from defendant's transformer which contained polychlorinate[d] biphenyls (PCBs), and

Second, defendant knew or by using ordinary care should have know that plaintiff's contact with the cooling fluid containing polychlorinated biphenyls (PCBs) presented a risk of bodily harm.

936 S.W.2d at 799. This Court found that the verdict directors assumed two disputed ultimate facts—"whether plaintiffs contacted the cooling fluid from defendant's transformer and whether such contact presented a risk of bodily harm." *Id.* at 801. Because the instructions assumed these disputed facts, the issues were removed from the jury's determination. *Id.* The Court found that "submission of these defective instructions constituted prejudicial error," requiring the Court to reverse and remand for a new trial. *Id.*

The Court noted with approval *Brown v. Van Noy*, 879 S.W.2d 667 (Mo.App.1994), which relied upon *Spring* to hold "that each essential element of the cause of action should be set out in a separate paragraph of the verdict director." *Lasky*, 936 S.W.2d at 801. Such a requirement ensures that the jury members focus on each element separately and prevents an instruction from creating an assumption that an element is true and not in dispute. *Brown*, 879 S.W.2d at 673.

In its ruling in *Lasky*, the Court rejected the holding of one of its prior cases, *Gathright v. Pendegraft*. *Lasky*, 936 S.W.2d at 801. In *Gathright*, this Court had found that it was not error "when a finding of the essential element is necessarily implied from the other findings" that are required by the verdict directing instruction. 433 S.W.2d 299, 311 (Mo. banc 1968). The *Lasky* Court found its more recent decision in *Spring* more persuasive, noting that "the Court in *Spring* had the benefit of *Gathright* and decided each element should be explicitly presented to the jury." 936 S.W.2d at 801.

More recently, this Court again rejected an argument that "the finding of a disputed fact was necessarily implied from the other required findings." *Harvey v. Washington*, 95 S.W.3d 93, 98 (Mo. banc 2003). In *Harvey*, the Court found that

"[t]he verdict directors confused the jury by assuming a disputed fact. Thus, submission of the defective instructions constitutes prejudicial error."[3] *Id.*

Ms. Hervey makes the additional argument that even if instruction No. 8 was erroneous, its submission did not prejudice the department in this case because the department's affirmative converse and the parties' oral argument made clear to the jurors that they must determine whether Ms. Hervey was disabled. In support of her argument, Ms. Hervey cites several cases finding no prejudice despite submission of an instruction that was erroneous. Most of these cases, however, are distinguishable on their facts. In two cases cited, the error in the submitted instruction was not the failure to require the jury to find a disputed element of the cause of action. *White v. Curators of Univ. of Mo.*, 937 S.W.2d 366, 369 (Mo.App.1996) (finding no prejudice when allegedly erroneous instruction accurately instructed jury on ultimate issue in dispute); *Citizens Bank of Appleton City v. Schapeler*, 869 S.W.2d 120, 128–29 (Mo.App.1993) (finding no prejudice when unpreserved alleged instructional error was based on omission of element not in dispute). In other cases, the court found no error in the instructions, so there could be no prejudice. *State ex rel. Mo. Hwy. & Transp. Comm'n v. Dale*, 309 S.W.3d 380, 384–85 (Mo.App. 2010) (no error found in instruction); *City of Kansas City v. Habelitz*, 857 S.W.2d 299, 303 (Mo.App.1993) (same); *McBryde v. Ritenour Sch. Dist.*, 207 S.W.3d 162, 168–70 (Mo.App.2006) (same).

The one case that Ms. Hervey cites with similar facts and an inapposite holding is *AgriBank FCB v. Cross Timbers Ranch, Inc.* 919 S.W.2d 256 (Mo.App.1996). In that case, the court of appeals found that the verdict director's failure to require a jury finding about all of the elements of the cause of action was not prejudicial. *Id.* at 261–62. The court concluded that the error in the instruction that implied a disputed fact was cured because the affirmative converse instruction explicitly required a finding about the implied ultimate fact. *Id.* at 261. The court also reviewed the contents of closing arguments in order to determine whether the instruction had a prejudicial effect on the jury. *Id.* at 262. The court concluded, that under the facts of the case, the jury was not misdirected and the defendant was not prejudiced by any error in the instructions. *Id.* at 261.

That case does not aid Ms. Hervey for two reasons. First, its finding is contrary to this Court's holdings in *Harvey, Lasky,* and *Spring.* Second, even if this Court were to find, which it does not, that the prejudice from the failure of a verdict director to submit all essential elements could be cured when an affirmative converse instruction includes the omitted fact, the department's affirmative converse instruction does not include the omitted fact of Ms. Hervey's disability. The department's affirmative converse instruction, instruction No. 9, directed the jury as follows:

> Your verdict must be for the Defendant if you believe:

---

3. The dissent would find that the error in the verdict director is not prejudicial because the jury instructions as a whole required the jury to find that Ms. Hervey is disabled. In particular, it references the definitional instruction for the word "disability." While the trial court did submit a definitional instruction de-

fining "disability," such instruction does not require the jury to make any findings so it does not cure the failure to the verdict director to submit the essential element of disability. Nor does the affirmative converse instruction cure the defect in the verdict director, as discussed *infra.*

First, defendant discharged plaintiff because she could not successfully complete her probationary period, and

Second, in so doing, her complaint of disability discrimination was not a contributing factor.

Like instruction No. 8, instruction No. 9 did not require the jury to find the disputed fact of Ms. Hervey's status as legally disabled. *AgriBank FCB* is distinguished on the facts, and the prejudicial error in Instruction No. 8 cannot be cured by Instruction No. 9.

Instruction No. 8 did not instruct the jury adequately about the substantive law in this case. The instruction was erroneous because it assumed as true a disputed fact, that Ms. Hervey was disabled, thereby relieving Ms. Hervey of her burden of proving an essential element of her disability discrimination claim under the MHRA. Whether Ms. Hervey was legally disabled at the time of her discharge is an essential element of her MHRA claim, so the verdict-directing instruction must require the jury to find that Ms. Hervey was disabled under a separately enumerated paragraph. The submission of a verdict director that did not hypothesize all essential elements of Ms. Hervey's claim was prejudicial error and requires that the trial court's judgment be reversed and the cause be remanded.

### "Net Amount of the Judgment" Includes Attorney Fees

█ The reversal of the judgment includes the reversal of Ms. Hervey's award of punitive damages. Nevertheless, the likelihood that the dispute over the meaning of the term "net amount of judgment" in section 510.265 will occur on remand requires this Court to address the department's second claim of error regarding the trial court's calculation of punitive damages. The department claims that the tri-

al court erred in awarding punitive damages of $1,303,632.50 under section 510.265 because the trial court included attorney fees in the "net amount of the judgment" used to calculate the amount of punitive damages awarded to Ms. Hervey. The department asserts that the inclusion of attorney fees in the net amount is contrary to the plain language of the statute and this Court's precedent about statutory interpretation.

The jury awarded Ms. Hervey $2.5 million in punitive damages, which the trial court subsequently reduced to comply with the statutory limits codified in section 510.265. Section 510.265.1 limits the amount of punitive damages in most civil cases:

1. No award of punitive damages against any defendant shall exceed the greater of:

(1) Five hundred thousand dollars; or

(2) Five times the net amount of the judgment awarded to the plaintiff against the defendant.

The department argues that the legislature's use of the word "net" shows its intention that attorney fees awarded a plaintiff should be subtracted from the judgment for the plaintiff before multiplying by five. The meaning of "net amount of the judgment" in section 510.265.1(2) is an issue of first impression.

█ Statutory interpretation is a question of law, which is subject to *de novo* review on appeal. *Devitre v. Orthopedic Center of St. Louis, LLC,* 349 S.W.3d 327, 331 (Mo. banc 2011). "The primary rule of statutory interpretation is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words in their plain and ordinary meaning." *South Metropolitan Fire Protection Dist. v. City of Lee's Summit,* 278 S.W.3d 659, 666 (Mo.

2009). Because the legislature did not define "net amount of the judgment" for purposes of section 510.265, the words are given their plain and ordinary meaning as typically found in the dictionary. *Derousse v. State Farm Mut. Auto. Ins. Co.*, 298 S.W.3d 891, 895 (Mo. banc 2009). The dictionary definition of "net" is "free from all charges or deductions" as "opposed to gross." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1519 (1993). Both parties agree that the legislature's use of the phrase "net amount of the judgment" evinces intent that the trial court judgment should be reduced by some amount. The department contends that if attorney fees are not subtracted from the judgment to arrive at the "net" amount of the judgment, that the words "net amount of the judgment" are superfluous. This is incorrect. A judgment entered by a trial court can be reduced in a number of ways, including the amount a plaintiff might owe to a defendant on a counterclaim or the amount of a codefendant's settlement. Contrary to the position of the department, to include attorney fees in the "net amount of the judgment" does not render those words superfluous.

In arguing that the "net amount of the judgment" does not include attorney fees, the department focuses more on the word "net" than on the word "judgment." In effect, the department equates the word "judgment" with plaintiff's "damages." It distinguishes between the purpose of the award of damages and the purpose of an award of attorney fees. The language "net amount of the judgment" does not support such a distinction. The legislature chose to use the word "judgment," not "damages," and "[t]his Court must give effect to statutes as they are written." *State ex rel. Stinson v. House*, 316 S.W.3d 915, 919 (Mo. banc 2010). The applicable definitions of "judgment" in Webster's dictionary are "a formal decision or determi-

nation given in a cause by a court of law or other tribunal" and "an obligation (as a debt) created by decree of a court." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1223 (1993). Similarly, Black's Law Dictionary defines "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case." BLACK'S LAW DICTIONARY (9th ed.2009).

In section 213.111.2, RSMo 2000, the relief available to a prevailing plaintiff in an MHRA discrimination case includes an award of attorney fees. The statute states, "The court may ... award to the plaintiff actual and punitive damages, and may award court costs and reasonable attorney fees to the prevailing party...." *Id.* The amount of attorney fees awarded to the plaintiff is included in the judgment as defined by Webster's and Black's. The judgment grants an enforceable right to the plaintiff to receive the value of the damages caused by the defendant, as well as the right to collect the attorney fees. Correspondingly, the judgment assigns a legal obligation to the defendant.

The department suggests that a different conclusion would be reached if the definition of "net amount of the judgment" found in prior Missouri cases were applied here. While it acknowledges that there is no direct authority interpreting the phrase "net amount of the judgment" under section 510.265, RSMo 2000, it argues the cases it cites should give the Court guidance in determining the "net amount of the judgment." One case, *Reed v. Reed*, held that attorney fees should be subtracted before determining "the net amount of the judgment" when calculating the figure to which an attorney's lien should attach. 10 S.W.3d 173, 183 (Mo.App.2000). The court in *Reed*, addressing issues of priority of attachment, subtracted the amount in response to a party attaching a lien on the judgment because the amount to which the

lien attached was not to include attorney fees previously awarded to another attorney. *Id.* Considering the use of the phrase in the circumstances of that case, it is reasonable to subtract attorney fees from the amount to which an attorney's lien should attach. The department also cites *Baker v. Whitaker,* which interpreted the meaning of a contingent fee contract providing for attorney fees of 50 percent of the "amounts paid [to the client]" upon resolution of the case. 887 S.W.2d 664 (Mo.App.1994). The court found that the contract language was ambiguous and remanded the case to the trial court. *Id.* at 670. Language in the opinion implied that the "net" amount of the money paid to the plaintiff properly would be determined by subtracting the medical payments made by the plaintiff. *Id.* The determination of the "net" amount of a settlement in *Baker,* for purposes of interpreting a contract, has no application here. Finally, the department cites as further authority a circuit court decision that this Court declines to consider.

The department further argues that the "net amount of the judgment" does not include attorney fees because the purpose of awarding punitive damages is to inflict punishment for wrongdoing and to deter similar conduct, *Chappell v. City of Springfield,* 423 S.W.2d 810, 814 (Mo. 1968), whereas the purpose of awarding attorney fees is to compensate counsel for their work. It asserts that the United States Supreme Court and state and federal courts in Missouri "have consistently focused their examination on the ratio between *compensatory damages to the plaintiff* and the punitive damages award." While that is true, if the legislature had intended the calculation of punitive damages to be the amount of the compensatory damages multiplied by five, it could have stated "amount of the compensatory damages" rather than using the language "net

amount of the judgment." *See Aquila Foreign Qualifications Corp. v. Director of Revenue,* 362 S.W.3d 1 (Mo. banc 2012). It did not.

Because Ms. Hervey was entitled to an award of attorney fees under section 213.111.2, RSMo 2000, when the jury found in her favor, the trial court included the fees in determining the "net amount of judgment" it used to calculate the maximum amount of punitive damages under section 510.265. The jury awarded Ms. Hervey $127,056 in actual damages and $2.5 million in punitive damages. The trial court awarded $36,288 in front pay and $97,382.50 for attorney fees. Absent application of section 510.265.1, therefore, the total amount that would be awarded to the plaintiff would have been $2,760,726.50. When the trial court applied section 510.265.1, it subtracted only the amount of the punitive damages award from its calculation to arrive at a net amount of $260,726.50 because there were no other appropriate setoffs or reductions. To calculate the limit on damages under section 510.265.1, the trial court multiplied the net amount of the judgment by five and awarded Ms. Hervey punitive damages of $1,303,632.50. This calculation is the correct application of section 510.265.1.

## Conclusion

Because the verdict directing instruction did not require the jury to find that Ms. Hervey was disabled, an essential element of her MHRA claim, the judgment of the trial court is reversed, and the cause is remanded.

RUSSELL, FISCHER and STITH, JJ., concur.

DRAPER, J., dissents in separate opinion filed.

TEITELMAN, C.J., concurs in opinion of DRAPER, J.

GEORGE W. DRAPER III, Judge, dissenting.

I respectfully dissent from the principal opinion because I believe under the facts of this case that the jury was instructed properly when examining the record as a whole and the verdict should be upheld.

Whether a jury was instructed properly is a question of law that this Court reviews *de novo*. *Edgerton v. Morrison*, 280 S.W.3d 62, 65 (Mo. banc 2009). This Court conducts its review in the light most favorable to the submission of the instruction, and if the instruction is supportable by any theory, then its submission is proper. *Klotz v. St. Anthony's Medical Center*, 311 S.W.3d 752, 766 (Mo. banc 2010). "Jury instructions are not to be viewed in isolation, but are to be taken as a whole to determine whether error occurred." *State v. Storey*, 40 S.W.3d 898, 912 (Mo. banc 2001). Reversal for instructional error is appropriate when the instruction misdirected, misled, or confused the jury and resulted in prejudice. *Edgerton*, 280 S.W.3d at 66. "This Court must review all submitted instructions together to determine if [the error] resulted in prejudicial error." *State v. Anderson*, 306 S.W.3d 529, 535 (Mo. banc 2010) (quoting *State v. White*, 622 S.W.2d 939, 943 (Mo. banc 1981)).

When examining the jury instructions as a whole, it is evident the question of Ms. Hervey's disability was placed squarely in front of the jury to determine as a threshold issue. Jury Instruction No. 2 directs the jury that "[y]ou should consider each instruction in light of and in harmony with the other instructions, and you should apply the instructions as a whole to the evidence."

Jury Instruction No. 6 provides a definitional instruction for the word "disability." It states: "A disability is a physical or mental impairment which substantially limits one or more of a person's major life activities, which with or without reasonable accommodation does not interfere with performing the job." This definition comports verbatim with the statutory definition of "disability" provided in section 213.010(4), RSMo Supp.2011.

Next, Jury Instruction No. 8, Hervey's verdict director, states: "Your verdict must be for the Plaintiff if you believe: First, Defendant discharged Plaintiff; and Second, disability was a contributing factor in such discharge; and Third, as a result of such conduct, Plaintiff sustained damage." This instruction is patterned after MAI 31.24 without modification. Rule 70.02(b) provides, "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case that the appropriate party requests or the court decides to submit, *such instruction shall be given* to the exclusion of any other instructions on the same subject." (Emphasis added). Further, Rule 70.02(c) directs, "The giving of an instruction in violation of the provisions of this Rule 70.02 shall constitute error, its prejudicial effect to be judicially determined" in the face of a timely objection.

Finally, Jury Instruction No. 9, the DOC's affirmative converse states: "Your verdict must be for Defendant if you believe: First, defendant discharged plaintiff because she could not successfully complete her probationary period, and Second, in doing so, her complaint of disability discrimination was not a contributing factor."

Here, I believe the jury was instructed properly to find all three elements for a MHRA claim under the law. There can be no doubt that the issue of whether Ms. Hervey was disabled was contested hotly throughout the trial. Since jurors are presumed to follow the court's instructions,

the Court must assume that the jury considered the definition of "disability," which comports with the substantive law mandating what a plaintiff must prove to establish disability discrimination under the MHRA. Moreover, the jury was instructed to consider whether disability, properly defined in the jury instructions, contributed to Ms. Hervey's discharge. Ms. Hervey's alleged disability could not be a contributing factor absent a finding by the jury that she did in fact have a disability, as was explained fully to the jury by the attorneys for both parties in their respective closing arguments.

I recognize the verdict director submitted in this case was not a model of clarity, and going forward, perhaps MAI 31.24 should be reexamined. However, when examining the evidence presented, the closing arguments of the parties, reading the jury instructions as a whole, and presuming jurors of reasonable intelligence followed the instructions, I do not believe the jury was misdirected, misled, or confused in rendering its verdict. Further, there is no evidence in the record that the verdict was inconsistent or otherwise confusing.

Therefore, I would find the verdict director proper, and I would affirm the trial court's judgment, including the trial court's calculation of damages pursuant to section 510.265.1, RSMo Supp.2011.