Thomas DeWALT, Plaintiff–
Respondent/Cross–
Appellant,

v.

DAVIDSON SERVICE/AIR,
INC., Defendant,

and

Donald Davidson, Defendant–
Appellant/Cross–
Respondent.

Nos. ED 97905, ED 97906.

Missouri Court of Appeals,
Eastern District.

Feb. 5, 2013.

Application for Transfer to Supreme
Court Denied March 14, 2013.

Application for Transfer Denied
May 28, 2013.

Jack B. Spooner, St. Louis, MO, for appellant.

Mark Potashnick, Eli Karsh, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Presiding Judge.

The defendant, Donald Davidson, appeals the judgment entered by the Circuit Court of St. Louis County following a jury verdict rendered against him and in favor of the plaintiff, Thomas DeWalt, on the plaintiff's claim of disability discrimination. The plaintiff cross-appeals his award of attorneys' fees. Finding no error in the appeal, we affirm the judgment for the plaintiff. As to the cross-appeal, the record contains nothing to explain the trial court's award of attorneys' fees in the amount of $75,000 and gives no indication of the factors the trial court considered in making its decision. Therefore, we reverse and remand the cause for findings of fact and conclusions of law on the calculation of the plaintiff's attorneys' fees.

*Facts*

The plaintiff obtained a commercial driver's license, and in April 2006 began work for Davidson Surface/Air, Inc. ("the company") as a truck driver for local routes. The defendant owns and operates the company. The company's local deliveries typically required no more than thirty minutes of drive time to complete. However, the local deliveries also involved time spent on other tasks such as loading, unloading, or waiting to receive a dispatch.

While the plaintiff primarily performed local deliveries for the company, he would occasionally volunteer to handle time-sensitive over-the-road runs, which had to be completed as quickly as possible and without any breaks. The plaintiff had performed one such run in 2007 to Kentucky. In the summer of 2007, the plaintiff began experiencing nausea, headaches, sensitivity to light, impotence, and extreme fatigue. Doctors diagnosed him with a large non-cancerous brain tumor that was too risky to attempt to remove surgically.

The plaintiff and his treating physician, Dr. Michael Berk, testified that the plaintiff suffers from a large pituitary brain tumor, sitting at the base of his skull between his eyeballs. The plaintiff explained that he was substantially limited in his ability to drive because he could not drive for more than ninety minutes without taking a break, that he could not read or use a computer for more than twenty to thirty minutes, and that the tumor greatly affected various bodily systems, namely his adrenal, thyroid, and sexual systems. Dr. Berk agreed with this testimony, and confirmed that headaches and fatigue are common symptoms of the plaintiff's condition. Dr. Berk testified that the brain tumor was neither minor nor temporary. Dr. Berk explained that he had restricted the plaintiff from driving more than ninety minutes at a time. He stated that he would not have imposed such a restriction unless he believed it to be necessary, and that the plaintiff could not perform over-the-road trucking jobs.

The plaintiff informed his supervisors, including the defendant directly, when he received his diagnosis, and he presented a doctor's note about the ninety-minute driving restriction. The plaintiff's direct supervisor, Mitchell Tubbs, confirmed that

the plaintiff advised him of the brain tumor and provided a doctor's note, and that Mr. Tubbs immediately informed the defendant of the plaintiff's tumor and restriction. Mr. Tubbs accommodated the plaintiff's condition by assigning him only local routes, and Mr. Tubbs testified that local deliveries were always available for drivers at the company. He testified that in his thirteen years with the company, there was never a weekday when the company had no local routes to dispatch.

Mr. Tubbs resigned from the company on September 1, 2007, and the plaintiff then reported to a new supervisor, Tony Jestis. In early September 2007, one of the dispatchers asked the plaintiff to make an over-the-road run to Indiana, and the plaintiff declined, explaining his medical condition and restriction. His supervisor told the plaintiff to stay home if he was not going to perform the run to Indiana. On September 13, 2007, Mr. Jestis asked the plaintiff to make another long over-the-road run to Illinois the next day. The plaintiff again demurred, explaining his medical condition and restriction. Mr. Jestis demanded that the plaintiff present another doctor's note, which the plaintiff did within a few days, and the note contained the same ninety-minute driving restriction. Pursuant to the defendant's direction, Mr. Jestis told the plaintiff to take the day off without pay and issued the first of four disciplinary write-ups that the plaintiff would receive in the next two weeks.

The plaintiff's hours then began decreasing because he did not receive much work. Over the next few weeks, the plaintiff's work hours were cut from almost forty hours per week, to 25 hours per week, to less than 25 hours, to none. On October 5, 2007, the plaintiff yet again declined a long over-the-road run, explaining that his medical restriction prohibited such runs. The plaintiff was not assigned any work that day. For the next two weeks, the plaintiff received no work assignments despite calling in every day to request work. A dispatcher and supervisor told the plaintiff that he would not be assigned any work if he would not drive over-the-road runs. This supervisor also told the plaintiff not to call in because no work would be available for him, and that dispatchers would call the plaintiff if they needed him. Mr. Jestis confirmed that after the plaintiff declined the October 5, 2007 over-the-road-run, he placed the plaintiff at the bottom of the list, and told the other dispatchers to call the plaintiff only if they needed him. The defendant and Mr. Jestis testified that numerous local routes were available during this time. The evidence revealed that several other drivers worked over forty hours per week driving local routes during the time that the plaintiff received no assignments. The plaintiff also testified that he could have worked in the warehouse, which he had frequently done in the past.

On October 18, 2007, after unsuccessfully trying to obtain work assignments for two weeks, the plaintiff appeared at the company in person and requested work. He was again told none was available. The plaintiff testified that he believed he would be assigned no more work and no longer had a job. Consequently, he returned his uniforms and requested the refund of his uniform deposit so that he would have money to pay bills. In order to receive his uniform deposit, the plaintiff was required to sign a form stating that he voluntarily quit, but he crossed out this language, and instead wrote that he had been constructively terminated. At the defendant's direction, Mr. Jestis prepared a memo signed by the defendant informing the plaintiff that the company had no work for him on the days he had requested it, and that he was terminated. The plaintiff

drove local routes for several other firms following his departure from the company.

The plaintiff filed suit against the company and the defendant individually, claiming disability discrimination under the Missouri Human Rights Act ("the MHRA"). A jury found in favor of the company on the plaintiff's claim that he was terminated or denied work based on disability, but found in the plaintiff's favor on his claim against the defendant individually that the defendant terminated him or denied him work based on disability. The jury awarded the plaintiff $7,500 in compensatory damages. The plaintiff requested $133,198.50 in attorneys' fees, and the trial court awarded $75,000. Both parties appeal.

### The Defendant's Appeal

In four points and several subpoints, the defendant challenges the submissibility of the plaintiff's case, the trial court's rejection of two proposed jury instructions, its submission of two other instructions, and the award of attorneys' fees.

### Point I

In his first point, the defendant challenges the submissibility of the plaintiff's case. He claims the trial court erred in denying his motions for directed verdict and for judgment notwithstanding the verdict because the plaintiff failed to present substantial evidence that: 1) he had a disability or that the defendant perceived him to have a disability; and 2) the plaintiff was constructively discharged or that the defendant refused to provide him with work. The defendant presents this argument through eight specific subpoints.

The standards of review for denial of a motion for directed verdict and denial of a motion for judgment notwithstanding the

verdict are essentially the same. *Keveney v. Mo. Military Academy*, 304 S.W.3d 98, 104 (Mo. banc 2010). To defeat either motion, the plaintiff must make a submissible case by offering substantial evidence to support every fact essential to a finding of liability. *Id.* To determine whether the evidence was sufficient to support the jury's verdict, we view the evidence in the light most favorable to the verdict, and we give the plaintiff the benefit of all reasonable inferences. *Id.* We disregard conflicting evidence and inferences. *Id.* We will reverse the jury's verdict only where we find a complete absence of probative facts to support the jury's conclusion. *Id.*

The statutes governing an MHRA discrimination claim constitute the source of the substantive law in this case. Section 213.055 RSMo. (2000)[1] prohibits discrimination in the employment context because of a person's race, color, religion, national origin, sex, ancestry, age, or disability.

■ It shall be an unlawful employment practice:

(1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual:

(a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability[.]

Section 213.055.1. The MHRA provides a civil right of action for an employee against an employer for unlawful discrimination that allows an aggrieved employee to recover actual and punitive damages,

1. All statutory references are to RSMo. (2000).

court costs, and reasonable attorney's fees. Section 213.111. A claim of disability discrimination under section 213.111 of the MHRA requires the plaintiff to show that: 1) he is legally disabled; 2) he was discharged; and 3) the disability was a factor in his discharge. *Hervey v. Mo. Dept. of Corrections*, 379 S.W.3d 156, 160 (Mo. banc 2012).

 First, a plaintiff must establish that he is legally disabled. *Id.* In other words, a plaintiff must establish that he had a disability, or that the defendant regarded him as having a disability, or that he has a record of having a disability. In his first five subpoints, the defendant contends that the plaintiff failed to establish either that he had a disability or that the defendant perceived the plaintiff to have a disability. The plaintiff established that he, in fact, has a disability.

A "disability" means:

[A] physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job, utilizing the place of public accommodation, or occupying the dwelling in question.

Section 213.010(4). The phrase "physical or mental impairment" means:

1. Any physiological disorder or condition, cosmetic disfigurement or anatomical loss affecting one (1) or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive; digestive, genitourinary; hemic and lymphatic; skin; and endocrine; or

2. Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness and learning disabilities[.]

8 C.S.R. 60–3.060(1)(A). Minor, temporary illnesses, such as broken bones, sprains, or colds, are not considered physical or mental impairments that result in a disability. 8 C.S.R. 60–3.060(1)(B)(1).

The plaintiff established that he had a physical impairment in that he has a physiological disorder or condition affecting his endocrine system. Dr. Michael Berk, one of the plaintiff's treating physicians, is an endocrinologist and diabetes specialist as well as a general internist. He specializes in the treatment of diseases resulting from hormone abnormalities, including pituitary abnormalities as in the plaintiff's case, and is board-certified in endocrinology and metabolism. Dr. Berk testified that the plaintiff has a non-cancerous tumor called a prolactinoma, which produces too much of the hormone prolactin. Dr. Berk stated that the plaintiff complained of fatigue, headaches, and decreased libido, and also had low Cortisol and thyroid hormone levels. He testified that the plaintiff's tumor was neither minor nor temporary. Dr. Berk explained that he imposed the restriction that the plaintiff drive no longer than ninety minutes without a break based on the plaintiff's complaints of headaches and fatigue, and that he would not have imposed such a restriction if he believed it to be unnecessary.

 The plaintiff also established that this impairment substantially limits major life activities. "Major life activities" are those that affect employability, such as communication, ambulation, self-care, socialization, education, vocational training, employment, and transportation. 8 C.S.R. 60–3.060(1)(C). A plaintiff is substantially limited in performing a major life activity for purposes of the MHRA if he is unable

to perform a major life activity, or is significantly restricted as to the condition, manner, or duration under which he can perform a particular major life activity. *Daugherty v. City of Maryland Heights,* 231 S.W.3d 814, 821 (Mo. banc 2007). A plaintiff's inability to perform one particular job does not constitute a substantial limitation on the major life activity of working. *Id.* Rather, a substantial limitation on the major life activity of working means that the individual must be significantly restricted in his ability to perform either a class of jobs or a broad range of jobs in various classes. *Id.* at 821–22.

The plaintiff established that his brain tumor substantially limited the major life activities of education, vocational training, and working. The plaintiff testified that he could not read or use a computer for more than twenty to thirty minutes without developing a migraine and vision problems because of his tumor. These difficulties would substantially limit the plaintiff's ability to obtain further education or vocational training. In addition, the jury could reasonably conclude that the plaintiff's limitations concerning reading and computer usage would restrict him from innumerable jobs in innumerable job classes. Furthermore, the evidence demonstrates that the plaintiff is significantly restricted in his ability to perform not only one particular job, but that he is significantly restricted in his ability to perform a class of jobs— any driving job that requires more than ninety minutes without a break.

The plaintiff showed that with reasonable accommodation, however, his physical impairment did not interfere with performing his job as a truck driver for the company. The plaintiff testified that he could perform local deliveries, which constituted the vast majority of his job duties with the company even before his medical diagnosis and resulting driving restriction. The plaintiff had, in fact, performed local deliveries for the company for nearly a year-and-a-half, and had been assigned only one over-the-road run during all of 2007 prior to his diagnosis. The plaintiff testified that he required no accommodation other than avoiding over-the-road runs that required driving for more than ninety minutes without a break. Mr. Tubbs testified that he had accommodated the plaintiff by assigning him only local deliveries between the time the plaintiff first reported his condition and September 2007, when Mr. Tubbs left employment with the company. The plaintiff and Mr. Jestis testified that there were always local deliveries that needed to be made. Mr. Tubbs likewise testified that local deliveries were always available for drivers at the company. Indeed, he testified that in his thirteen years with the company, there was never a weekday when the company had no local routes to dispatch.

The plaintiff established that he has a physical impairment, namely a pituitary tumor, a physiological condition that affects his body's endocrine system. Such impairment substantially limits the plaintiff's major life activities of education, vocational training, and working in that it significantly restricts his ability to perform any function that requires more than thirty minutes of reading or computer usage, or any job that requires driving for more than ninety minutes without a break. With reasonable accommodation, however, the impairment does not interfere with the plaintiff's job performance as a truck driver. Thus, the plaintiff established that he is legally disabled.

■ Second, a disability-discrimination plaintiff must show that he was discharged. *Hervey,* 379 S.W.3d at 160. In his next two subpoints, the defendant contends that the plaintiff failed to prove that he was constructively discharged or that

the defendant refused to provide the plaintiff with work.

A person is constructively discharged when an employer deliberately renders an employee's working conditions so intolerable that the employee is compelled to quit his job. *Gamber v. Mo. Dept. of Health and Senior Servs.*, 225 S.W.3d 470, 477 (Mo.App. W.D.2007). "To effect a constructive discharge, the working conditions must be such that a reasonable person would find them intolerable." *Id.* A claim of constructive discharge requires aggravating factors or a continuous pattern of discriminatory treatment. *Id.* Evidence of a single instance is insufficient. *Id.* Reasonableness requires an employee not to assume the worst, and not to jump to conclusions too quickly. *Id.* No constructive discharge occurs where an employee quits without giving the employer a reasonable chance to resolve the problem. *Id.* Missouri courts have applied the test for constructive discharge used by the federal courts for the Eighth and Tenth Circuits: 1) a reasonable person in the employee's situation would find the working conditions intolerable, and 2) the employer intended to force the employee to quit, or the employer could reasonably foresee that its actions would cause the employee to quit. *Id.*

The plaintiff showed that twice when he declined to violate his medical restriction by risking an over-the-road run, he was punished by either being sent home or told to stay home without pay. He also received four disciplinary write-ups immedi-ately following his refusal to violate his medical restriction.[2] After the third time in the course of a month that the plaintiff declined to violate his medical restriction, supervisors never again gave him any work. In fact, the plaintiff testified that supervisors expressly told him he would not be assigned any work if he would not drive over-the-road runs, assignments that would violate his medical restriction. The plaintiff did not jump to conclusions too quickly. To the contrary, he gave his employer a chance every day for two weeks to resolve the problem, even longer considering that he twice declined to violate his medical restriction in the month before being denied work completely. A reasonable person in the plaintiff's situation would find these working conditions intolerable. Furthermore, an employer could reasonably foresee that its insistence that the plaintiff consistently violate his medical restriction or suffer adverse consequences would cause the plaintiff to quit. Thus, the plaintiff was constructively discharged in that he was denied work until his situation became intolerable.

Finally, a claim of disability discrimination under section 213.111 requires the plaintiff to show that the disability was a factor in the plaintiff's discharge. *Hervey*, 379 S.W.3d at 160. The defendant does not address this element on appeal. Consequently, we shall not consider it other than to observe that the plaintiff testified once he refused to violate the medical restriction necessitated by his disability, he received no work assignments for two

---

2. The first write-up documented the events of September 13, 2007, when the plaintiff declined the over-the-road run to Illinois. This write-up states that the defendant instructed the plaintiff to take the day off without pay. The second write-up alleged that the plaintiff made unprofessional comments in front of a customer on September 26, 2007. The third write-up then charged the plaintiff with insub-ordination for questioning the ability of the dispatchers immediately following the September 26, 2007 incident. Finally, the plaintiff received an undated write-up for failing to maintain communication with the dispatchers on September 13, 18, 21, and 24, 2007 when the plaintiff alleged radio and cell phone failure.

weeks, despite calling in to request work every day. He also testified that supervisors told him that he would not be assigned any work if he would not drive over-the-road runs. The evidence demonstrates that the plaintiff's disability and resulting restriction on driving was a factor in his constructive discharge.

■■■■■ In his final subpoint, the defendant claims that the jury verdict in favor of the company and the verdict against him are inconsistent. This claim is not contained in the defendant's point relied on. An appellant shall limit argument to those errors included in the points. Rule 84.04(e). Arguments not encompassed by the point relied on are not preserved for review. *Id.; Gamber*, 225 S.W.3d at 477. Nor is this claim included in either the defendant's motion for judgment notwithstanding the verdict or his motion for new trial. A party in a jury-tried case must include allegations of error in a motion for new trial in order to preserve them for our review, unless such allegations of error were included in a motion for judgment notwithstanding the verdict. Rule 78.07(a).

We will disturb the jury's verdict only where we find a complete absence of probative facts to support it. *Keveney*, 304 S.W.3d at 104. Viewing the evidence in the light most favorable to the verdict and disregarding contrary evidence, the plaintiff made a submissible case on each element needed to prove disability discrimination. We deny the defendant's first point.

### Point II

In his second point, the defendant claims the trial court erred in refusing his proffered instructions 7A and 7B and in giving instructions 7 and 14. He faults the instructions given for failing to define the terms "reasonable accommodation" and "major life activities," for failing to clarify that a person is disabled "if he or she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes," and for failing to require the jury to find that the plaintiff had a disability. As a result, he claims the instruction misdirected the jury and gave it a roving commission.

■■■■ The defendant's point relied on violates Rule 84.04(d) because it joins multiple, unrelated contentions. *Klinkerfuss v. Cronin*, 289 S.W.3d 607, 613 (Mo.App. E.D.2009). The point contains multiple legal issues, which the defendant should have stated in separate points. *Id.* We also observe that the defendant's brief does not accurately set forth the language of his proffered instructions as they appear in the record.

■■■■■ Whether the trial court properly instructed the jury is a question of law that we review *de novo*. *Hervey*, 379 S.W.3d at 159. We conduct our review in the light most favorable to the record, and an instruction's submission is proper where it is supported by any theory. *Id.* We reverse instructional errors only if the error resulted in prejudice that materially affected the merits of the action. *Id.* The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, and resulted in prejudice to the challenging party. *Id.* However, we review a trial court's refusal to give an instruction for abuse of discretion. *Fleshner v. Pepose Vision Institute, P.C.*, 304 S.W.3d 81, 97 (Mo. banc 2010). A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it, and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* at 97–98.

Rule 70.03 states in pertinent part that "[c]ounsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection."

■ We first consider Instruction 7 and the trial court's rejection of the defendant's proffered Instructions 7A and 7B. Instruction 7 as given set forth the definition of "disability" contained in section 213.010(4). The defendant's proffered Instruction 7A set forth the same statutory definition of "disability," as well as the definitions contained in 8 C.S.R. 60–3.060(1) of "major life activities" "regarded as having" a disability, and "disability unrelated to a person's ability to perform the duties of a particular job or position." It also stated that "[a]n individual is disabled if he or she is significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." Proffered Instruction 7B duplicated many of the definitions contained in proffered Instruction 7A, but deleted the language from caselaw about a restricted ability to perform either a class of jobs or a broad range of jobs in various classes.

■ The defendant offered no specific objection to Instruction 7. Rather, he simply proffered his proposed Instructions 7A and 7B with the explanation that he believed it would be helpful and instructive for the jury to understand the meaning of the defined terms. Even assuming, *arguendo*, that the proffered definitions constituted a specific objection to Instruction 7, we reiterate that the party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, and resulted in prejudice to the challenging party. *Hervey*, 379

S.W.3d at 159. On appeal, the defendant asserts that without these definitions, the jury was given a roving commission and was free to define "disability" and "major life activities" in any way it wished. Yet he fails to explain how or in what manner the absence of his proposed definitions prejudiced him, especially given the statutory definition of "disability" that Instruction 7 provided for the jury. An appellant abandons his point where he fails to support a claim of error beyond mere conclusions. *Moseley v. Grundy County Dist. R–V School*, 319 S.W.3d 510, 513 (Mo.App. E.D.2010).

■ We next consider Instruction 14. The defendant contends that Instruction 14 failed to require the jury to find that the plaintiff was disabled. He argues that Instruction 14 improperly assumed an essential ultimate fact in dispute, thus prejudicing him.

At the instruction conference, the defendant objected to Instruction 14 on the same basis that he had objected to Instruction 9, and he asked that his arguments and objections to Instruction 9 be incorporated by reference. The defendant objected to Instruction 9 on two bases. First, the defendant objected that the evidence did not support submission of the instruction on the issue of the plaintiff being regarded as having a disability. Second, the defendant objected to language in the instruction that disability was a contributing factor in the plaintiff's discharge. Thus, the defendant's contention that Instruction 14 improperly assumed an essential ultimate fact in dispute is not preserved, and we will review this contention only for plain error.

■ Plain-error review is discretionary, and we rarely grant plain-error review in civil cases. Rule 84.13(c); *Declue v. Dir. of Revenue*, 361 S.W.3d 465,

467 (Mo.App. E.D.2012). Review for plain error places a much greater burden on an appellant than a review for prejudicial error. *Id.* We will find plain error only where the alleged error establishes substantial grounds for believing that a manifest injustice or miscarriage of justice occurred. *Hensley v. Jackson County*, 227 S.W.3d 491, 497 (Mo. banc 2007). To establish that an instructional error constitutes plain error, the appellant must demonstrate that the trial court so misdirected or failed to instruct the jury that it becomes evident that the instructional error affected the jury's verdict. *Id.* at 497–98.

■ Instruction 14 was the plaintiff's verdict director, patterned on MAI 31.24 without modification. Instruction 14 as submitted stated:

Your verdict must be for plaintiff if you believe:

First, defendant Donald Davidson discharged plaintiff or refused to provide him work,

Second, disability or being regarded as having a disability was a contributing factor in such discharge or refusal to provide plaintiff work, and

Third, as a direct result of such conduct, plaintiff sustained damage.

Where, as here, a plaintiff's status as a member of a protected class is in dispute, the substantive law requires that the jury find, as an essential element of the plaintiff's claim, that the plaintiff is, in fact, a member of the protected class. *Hervey*, 379 S.W.3d at 160. Our Supreme Court in *Hervey* concluded that despite the substantive law, MAI 31.24 does not provide the trial court with direction in situations in which the defense contests the plaintiff's status as a member of a protected class. *Id.* Rather, MAI 31.24 presumes that the

plaintiff's status as a member of a protected class is undisputed, as is common in claims such as those for sex or race discrimination. *Id.* The *Hervey* Court held that submission of a verdict director that did not hypothesize all essential elements of the plaintiff's claim was prejudicial error, necessitating reversal of the trial court's judgment and remand of the cause. *Id.* at 163.

■ The plaintiff's verdict director, patterned on MAI 31.24, likewise failed to hypothesize the essential element of the plaintiff's disability or perceived disability. This case, however, is readily distinguishable from *Hervey*. Importantly, because the defendant did not object to Instruction 14 on this basis, we review not merely for prejudicial error, but rather for plain error. Furthermore, the trial court allowed the defendant to submit Instruction 15, which—unlike the defendant's converse instruction in *Hervey*—expressly required the jury to find that the plaintiff "was disabled or was regarded as having a disability." As the defense explained when it proffered its converse Instruction 10 as to the company, which is otherwise identical to Instruction 15 preferred as to the defendant, "MAI 33.01 [the general comment on converse instructions] permits modifications as long as it adequately reflects the law, and in this particular case the plaintiff has the burden of proving either he was disabled or regarded as having a disability. That's the only addition." Even where an instruction, standing alone, assumes a disputed ultimate issue, we must consider it together with any affirmative converse instruction given. *Dierker Assoc., D.C., P.C. v. Gillis*, 859 S.W.2d 737, 748 (Mo.App. E.D.1993).[3] The court also submitted Instruction 7, which provided the jury with the statutory definition of "disability."

---

**3.** The *Hervey* Court declined to address the question whether an affirmative converse

would remedy a defective verdict director that assumed a disputed fact. 379 S.W.3d at 162.

Taking Instructions 7, 14, and 15 together in our consideration of plain error, we find no substantial grounds to believe that a manifest injustice or miscarriage of justice occurred in submitting Instruction 14 to the jury.

■ The defendant also attempts to argue that the jury instructions created a roving commission regarding the issue of the plaintiff's constructive discharge because no evidence supported such a submission. We considered the evidence of the plaintiff's constructive discharge in Point I, and found that the plaintiff made a submissible case. Furthermore, this argument is not contained in the defendant's point relied on. Arguments not encompassed by the point relied on are not preserved for review. 84.04(e); *Gamber*, 225 S.W.3d at 477. We deny the defendant's second point.

*Point III*

■ In his third point, the defendant asserts the trial court erred by failing to provide a definition of "contributing factor" to the jury. He argues that the term "contributing factor" has a legal or technical meaning in an MHRA case. He contends that without a definition of "contributing factor," Instruction 14 created a roving commission.

Again, whether the trial court properly instructed the jury is a question of law that we review *de novo*. *Hervey*, 379 S.W.3d at 159. The party challenging the instruction must show that the offending instruction misdirected, misled, or confused the jury, and resulted in prejudice to the challenging party. *Id.* The trial court has sound discretion as to whether to submit a definitional instruction. *Warren v. State*, 291 S.W.3d 246, 249 (Mo.App. S.D. 2009).

■ Rule 70.02(b) provides that modified or non-MAI jury instructions should be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." "[L]egal or technical words occurring in the instructions should be defined, but the meaning of ordinary words used in their usual or conventional sense need not be defined." *Warren*, 291 S.W.3d at 249–50 (quoting *In re Van Orden*, 271 S.W.3d 579, 586 (Mo. banc 2008)).

Instruction 14 was the plaintiff's verdict director, patterned on MAI 31.24 without modification. Instruction 14 as submitted stated:

Your verdict must be for plaintiff if you believe:

First, defendant Donald Davidson discharged plaintiff or refused to provide him work,

Second, disability or being regarded as having a disability was a contributing factor in such discharge or refusal to provide plaintiff work, and

Third, as a direct result of such conduct, plaintiff sustained damage.

Here, the defendant objected that the term "contributing factor" should be defined. These words, however, are commonly used and readily understandable. The term provided the jury with sufficient instruction on this element of the plaintiff's claim. When reviewing instructions, we presume jurors have ordinary intelligence, common sense, and an average understanding of the English language. *Id.* at 251. We reject the defendant's argument that the term "contributing factor" contained in the MAI instruction has a legal or technical meaning that misdirected, misled, or confused the jury and that prejudiced the defendant. Consequently, we deny the defendant's third point.

*Point IV*

■ In his fourth point, the defendant claims the trial court abused its discretion in rendering the attorneys' fee award of $75,000 because the award was excessive and grossly disproportionate to the $7,500 in damages that the jury awarded the plaintiff. The plaintiff counters that the defendant failed to preserve for review any allegations of error regarding the award of attorneys' fees.

Section 213.111.2 provides in relevant part that the court may award court costs and reasonable attorneys' fees to the prevailing party, other than a state agency or commission or a local commission, except that a prevailing defendant may obtain such an award only upon showing that the case is without foundation.

The plaintiff timely filed a motion for attorney fees along with extensive supporting documentation and later supplemented that motion, ultimately requesting that the trial court grant him attorneys' fees of $133,198.50. The defendant filed no written response to the plaintiff's motion. The trial court heard the matter and took it under submission. We have no record of any objection or challenge that the defendant raised to the plaintiff's requested award of $133,198.50. The defendant did not respond either in his reply brief or in oral argument to the plaintiff's assertion that this issue is not preserved for appeal.

An issue that was never presented to the trial court is not preserved for our review. *Smith v. Shaw,* 159 S.W.3d 830, 835 (Mo. banc 2005). Based on the record before us, we conclude that the defendant's challenge to the award of attorneys' fees is not preserved for our review. Consequently, we deny the defendant's fourth point.

*The Plaintiff's Cross–Appeal*

The plaintiff challenges the trial court's calculation of attorney's fees. In one point on appeal, he claims that the trial court abused its discretion in awarding only $75,000 of his requested $133,198.50 in attorneys' fees because the court arbitrarily arrived at this figure. He contends that the award is so unreasonable as to indicate indifference and a lack of proper consideration because the award bears no relationship to the amount of time actually expended by the plaintiff's attorneys and fails to recognize the important public purpose served by prosecution of discrimination claims under the MHRA.

■ Section 213.111.2 provides in relevant part that the court may award court costs and reasonable attorney's fees to the prevailing party. A prevailing party is one who obtains success on any significant issue in the litigation, achieving some of the benefit the party sought in bringing suit. *Alhalabi v. Mo. Dept. of Natural Resources,* 300 S.W.3d 518, 530 (Mo.App. E.D.2009).

■ The determination of reasonable attorney's fees is within the trial court's sound discretion. *Gilliland v. Mo. Athletic Club,* 273 S.W.3d 516, 523 (Mo. banc 2009). We shall not reverse the trial court's determination unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration. *Alhalabi,* 300 S.W.3d at 530. Missouri courts have set forth a number of factors to consider in assessing a fee award, including: 1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; 2) the number of hours reasonably expended on the litigation; 3) the nature and character of the services rendered; 4) the degree of professional ability required; 5) the nature and impor-

tance of the subject matter; 6) the amount involved or the result obtained; and 7) the vigor of the opposition. *Gilliland,* 273 S.W.3d at 523. The degree of responsibility imposed on the attorney for whom fees are sought is another relevant factor. *Hill v. City of St. Louis,* 371 S.W.3d 66, 82 (Mo.App. E.D.2012).

In *Hensley v. Eckerhart,* the U.S. Supreme Court stated that while there are numerous factors to consider when making a fee award, "the most critical factor is the degree of success obtained." *Trout v. State,* 269 S.W.3d 484, 488 (Mo.App. W.D.2008) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). A court might also consider the extent to which a plaintiff prevailed on some claims and not on others. *Gilliland,* 273 S.W.3d at 523–24. If the plaintiff's claims for relief are based on different legal theories and facts, and counsel's work on one claim is unrelated to work on another, then the court should treat the unrelated claims as if they had been raised in separate lawsuits. *Alhalabi,* 300 S.W.3d at 530. Therefore, the court may award no fee for services on the unsuccessful and unrelated claims. *Id.* On the other hand, if the claims for relief have a common core of facts and are based on related legal theories, so that much of counsel's time is devoted generally to the litigation as a whole and rendering it difficult to divide the hours expended on a claim-by-claim basis, such a lawsuit cannot be viewed as a series of distinct claims. *Id.* at 530–31. In short, the efforts of the prevailing attorneys should not be discounted where the effort and proof were the same for the claims on which the plaintiff prevailed and those on which he did not. *Gilliland,* 273 S.W.3d at 524 (citing *Hensley,* 461 U.S. at 451, 103 S.Ct. 1933). This is especially true where counsel obtained complete relief for the plaintiff on the successful claims. *Id.*

Three months after the jury rendered its verdict, the trial court entered an order and amended judgment. The amended judgment simply stated, "[p]laintiff's motions for attorney's fees and costs are granted. Plaintiff is awarded attorney's fees in the amount of $75,000.00." The amended judgment contains neither findings of fact nor conclusions of law. It neither suggests a rationale nor offers an explanation for the trial court's decision to award the plaintiff attorneys' fees of $75,000. At oral argument, the defendant's attorney commendably acknowledged that it appeared the trial court awarded attorneys' fees by multiplying the damage award by ten. "A rule of proportionality would make it difficult, if not impossible, for individuals with meritorious civil rights claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera,* 477 U.S. 561, 578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)(plurality opinion). Citing *Rivera,* the Third Circuit held in *Washington v. Philadelphia County Court of Common Pleas* that, while the amount of damages recovered is not irrelevant, "a court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages awarded." 89 F.3d 1031, 1041 (3d Cir.1996).

The record does not allow us to determine what factors the trial court considered in deciding to award the plaintiff $75,000 in attorneys' fees. Because the trial court failed to make any findings of fact or conclusions of law or to enumerate its reasons for reducing the plaintiff's fee request, we are left to speculate on the factors it considered in its award, which we will not do. Consequently, we cannot determine if the trial court gave proper consideration to the plaintiff's request for at-

torneys' fees and whether it abused its discretion.

*Conclusion*

We reverse and remand the cause for findings of fact and conclusions of law consistent with this opinion on the calculation of the plaintiff's attorneys' fee award.[4] We affirm the judgment in all other respects.

PATRICIA L. COHEN, J., and KURT S. ODENWALD, J. concur.

---

4. The plaintiff has also requested an award of attorneys' fees for their work on this appeal. We remand this issue to the trial court as well.