

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| KENNETH FERGUSON, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | **WD78752** |
| v. | ) | **(Consolidated with WD78777** |
| | ) | **and WD78784)** |
| | ) | |
| CURATORS OF LINCOLN | ) | **OPINION FILED:** |
| UNIVERSITY, In Their Official Capacities, | ) | **May 31, 2016** |
| a/k/a LINCOLN UNIVERSITY, | ) | |
| | ) | |
| Respondent-Appellant. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri**
**The Honorable Jon E. Beetem, Judge**

**Before Division Four:** Alok Ahuja, Chief Judge, and
Mark D. Pfeiffer and Karen King Mitchell, Judges

The Board of Curators for Lincoln University (Lincoln) appeals the trial court's judgment, entered upon a jury's verdict, finding Lincoln liable for age discrimination under the Missouri Human Rights Act (MHRA) against former Lincoln employee, Kenneth Ferguson. Lincoln brings three points on appeal, arguing error in the admission of evidence, lack of sufficient evidence to make a submissible case, and error in the award of attorneys' fees. Ferguson cross-appeals, arguing that the trial court failed to consider additional time required to respond to post-trial motions in calculating the amount of attorneys' fees to award. We affirm.

## Background[1]

Ferguson started working for Lincoln in 1977; he began as the Assistant Director of Civil Activities. Over the years, he worked in various positions, including Director of Student Activities, Coordinator of Men, Director of Scruggs University Center (Lincoln's student union), and Director of Student Life. In 2009, then-University President Carolyn Mahoney created a new position, Director of Governmental and Community Relations, and appointed Ferguson to the job.

On January 19, 2012, Lincoln's Chief Financial Officer advised Dr. Mahoney that the General Assembly was anticipating a 12.5% reduction in Lincoln's budget allocation for fiscal year 2013. Despite the anticipated budget cut, Lincoln still planned to increase salaries across the board by 2%. In mid-February of 2012, the CFO sent Dr. Mahoney a second message, indicating that the anticipated budget cut was reduced to 8%. On April 17, 2012, Ferguson's direct supervisor, Curtis Creagh, sent Dr. Mahoney an email regarding possible position eliminations for the 2013 budget in order to address the anticipated budget cut. In the email, Creagh stated:

> I had two positions that were pending resolution: Tamala Norfus & Ken Ferguson. Tamala is not yet eligible to retire; I want to keep this position until she is. Ken Ferguson *is* eligible to retire; I can give up this position and associated departmental expenses, if necessary.

In June 2012, when the Governor signed the budget, Lincoln suffered only a 1% cut in its funding from the State.

Nevertheless, on July 16, 2012, Creagh sent a memo to Dr. Mahoney, recommending Ferguson's termination and stating, "The reason for the separation is insufficient budget to fund

---

[1] We review the facts in the light most favorable to the verdict. *Higgins v. Ferrari*, 474 S.W.3d 630, 635 (Mo. App. W.D. 2015).

the office of Governmental Affairs."[2]  The same day, Lincoln issued a termination letter to Ferguson, advising him that "Due to budget constraints at Lincoln University, a decision has been made to eliminate the position of Director of Governmental and Community Relations. This letter is official notification that your employment at Lincoln University will terminate on August 16, 2012."[3]

Ferguson appealed the decision, claiming that he had been terminated because of his age, and a grievance hearing was held before a review panel consisting of four individuals, one of whom was Dr. K.B. Paul.  During the hearing, Dr. Paul made the following comments:

Dr. Paul:  You know, I see this thing from a different angle though.

If you were put in—in the position that Mr. Creagh is or where Dr. Mahoney is and you are faced with a situation that you had to let a couple of people go.

I—I thought that, you know, it was very nice of them that they kind of went through the roster, that who can we—it isn't—whenever you let somebody go, it is never an easy decision.  It is always very hard.  It doesn't matter who that person is.

. . .

But, if I have a choice between somebody who has served his time here.  He has earned his full retirement.  So this is one case.

Another case, that maybe somebody just young came here, started a job, raising a young family, and if I let that person go, if I['m] faced with the choice.

This person on one hand, this person can go on retirement and can still get the full salary, full benefits, everything.

On the other hand this individual, if I let him go or (inaudible) go, then this person is not ready to retire and this person is going to be faced with a lot of hardship.

---

[2] At trial, Creagh added—for the first time—that he believed Ferguson's position should be eliminated because it was an "outlier" among his direct reports and because Ferguson's department had only one person.

[3] Tamala Norfus was also terminated; Norfus and Ferguson represented the only two positions eliminated at Lincoln for the 2013 fiscal year.  $134,000 was saved as a result of eliminating these two positions.

So I see this thing from a different point of view. I see where it is going to affect the individual less. Now with all of that.

And I thought that—that was very humane on their part, that if I am faced to the decision that I have to let one person go, do I pick this person? Do I pick that person? Now, based on everything else being equal.

Following the hearing, the panel issued a report and findings with a recommendation to uphold the termination. Dr. Mahoney sent Ferguson a letter stating:

This letter comes to notify you that the internal grievance panel has completed its investigation into your allegations. For your information, I have attached a copy of the Internal Grievance Panel's report.

I have reviewed this matter carefully and I accept the findings and recommendations of the sub-committee. No further action will be taken.

This completes the University's internal grievance process on the matter.

Ferguson filed a charge of discrimination with the Missouri Commission on Human Rights (MCHR), claiming that he was terminated as a result of age discrimination. MCHR subsequently issued a right-to-sue letter, and Ferguson filed a petition against Lincoln alleging violations of both the MHRA and the Age Discrimination in Employment Act (ADEA). Ferguson subsequently dismissed the ADEA claim and proceeded solely under the MHRA.

At trial, Lincoln objected to the admission of Dr. Paul's statements during the internal grievance hearing, arguing that they were irrelevant because Dr. Paul was not a decisionmaker and spoke only for himself—not the University. The court overruled the objection. The jury ultimately found Lincoln liable for age discrimination under the MHRA.

Following trial, Lincoln filed a motion for new trial, arguing (among other claims) that the evidence was insufficient to submit the case to the jury (on the ground that retirement eligibility was not a proxy for age) and that Dr. Paul's statements should not have been admitted into evidence. Ferguson filed a motion for attorneys' fees and costs, requesting a total of

4

$49,107.50 in attorneys' fees, based upon a rate of $325 per hour. Ferguson also filed a response to Lincoln's motion for new trial. After filing the response, Ferguson filed a supplemental affidavit, seeking $14,040 in additional attorneys' fees for the time spent responding to the motion for new trial.

On June 16, 2015, the trial court entered an order denying Lincoln's motion for new trial and awarding Ferguson attorneys' fees in the amount of $49,107.50, the amount of the initial request. One week later, Ferguson filed a motion to amend the order awarding attorneys' fees, noting that the amount awarded reflected the original request but not the additional amount requested in the supplemental affidavit for work on the post-trial matters. The motion to amend included a proposed judgment altering the attorneys' fees award to $63,147.50, which the trial court signed the next day.

Lincoln appeals and Ferguson cross-appeals.

## Analysis

Lincoln brings three points on appeal: (1) the trial court erred in admitting Dr. Paul's statements because they were irrelevant; (2) the evidence was insufficient to submit the case to the jury in that there was no evidence that age played a role in the decision to terminate Ferguson; and (3) the award of attorneys' fees was excessive insofar as $325 per hour exceeded the prevailing rate and Ferguson obtained only limited success. Ferguson cross-appeals, arguing that the court's June 16, 2015 award of attorney's fees failed to include additional attorneys' fees incurred in responding to Lincoln's post-trial motions. We affirm.

### A. The court committed no error in admitting Dr. Paul's statements.

"The trial court has broad discretion in determining whether to admit or exclude evidence." *State v. Johnson*, 477 S.W.3d 218, 226 (Mo. App. W.D. 2015) (quoting *State v.*

*Joyner*, 458 S.W.3d 875, 880 (Mo. App. W.D. 2015)). "Thus, we review the trial court's decisions regarding the admission of evidence for an abuse of discretion." *Id*. (quoting *Joyner*, 458 S.W.3d at 880). "The trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id*. (quoting *Joyner*, 458 S.W.3d at 880).

Here, Lincoln objected to the admission of Dr. Paul's statements made during the internal grievance hearing on the ground that they were irrelevant in that Dr. Paul was not a decisionmaker; thus, his statements neither refuted nor proved that Ferguson's age was a contributing factor in his termination. We disagree.

"Employment discrimination cases . . . 'often depend on inferences rather than on direct evidence . . . because employers are shrewd enough not to leave a trail of direct evidence.'" *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 116 (Mo. banc 2015) (quoting *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818, 818 n.4 (Mo. banc 2007)). "Therefore, individual plaintiffs claiming discriminatory employment action on the basis of age, or any other protected classification, generally must rely on circumstantial evidence." *Id*.

"As with other forms of evidence, circumstantial evidence of employment discrimination must be both logically and legally relevant to be admissible." *Id*. "Evidence is logically relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, or if it tends to corroborate evidence which itself is relevant and bears on the principal issue of the case." *Id*. (quoting *State v. Tisius*, 92 S.W.3d 751, 760 (Mo. banc 2002)). "The legal relevance analysis requires the trial court to balance 'the probative value of the proffered evidence against its prejudicial effect on the jury.'" *Id*. (quoting *Tisius*, 92 S.W.3d at 760).

6

"Not all comments that reflect a discriminatory attitude will support an inference that an illegitimate criterion was a [contributing] factor in an employment decision."[4] *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 449 (8th Cir. 1993). Courts "have carefully distinguished between[: (1)] [c]omments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, [and (2)] stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Rivers-Frison v. S.E. Mo. Cmty. Treatment Ctr.*, 133 F.3d 616, 619 (8th Cir. 1998) (internal quotations omitted). In other words, the "inquiry is not limited to those formally entrusted with decisionmaking duties." *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 641 (8th Cir. 2002), *abrogated on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). "If a reasonable factfinder could conclude that [an individual] was closely involved in the [employment] decision . . . , then his alleged comments are relevant to the direct evidence analysis." *Id*.

Here, Lincoln is correct that Dr. Paul was not a decisionmaker. But, as the Eighth Circuit noted in *Mohr*, the "inquiry is not limited to those formally entrusted with decisionmaking duties." *Mohr*, 306 F.3d at 641. "When a decision to fire is made with no unlawful animus on the part of the firing agent, but partly on the basis of a report prompted (unbeknownst to that agent) by discrimination, [the] discrimination might . . . be called a 'factor' . . . in the decision . . . ." *Staub v. Proctor Hosp*., 562 U.S. 411, 418-19 (2011). "[T]he exercise of judgment by the decisionmaker does not prevent the earlier agent's action . . . from being the

---

[4] Eighth Circuit discrimination cases hinge upon whether discriminatory comments could support an inference that an illegitimate criterion was a "motivating" factor in the employment decision. *Radabaugh v. Zip Feed Mills, Inc.*, 997 F.2d 444, 448 (8th Cir. 1993). Though age must be a "motivating" factor under the ADEA, it need be only a "contributing" factor under the MHRA. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818-19, 820 (Mo. banc 2007) ("Missouri's discrimination safeguards under the MHRA . . . are not identical to the federal standards and can offer greater discrimination protection," and the "contributing factor" standard "is consistent with the plain meaning of the MHRA.").

proximate cause of the harm." *Id*. at 419. Accordingly, "discriminatory comments . . . made by . . . those in a position to influence the decisionmaker" are relevant to the question of whether the plaintiff's age was a contributing factor in the adverse employment decision. *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 55 (1st Cir. 2000); *see also Stanley v. JerDen Foods, Inc.*, 263 S.W.3d 800, 804 (Mo. App. W.D. 2008) ("[A]ctions or remarks . . . uttered by individuals closely involved in employment decisions may constitute direct evidence" of discrimination (quoting *Campos v. City of Blue Springs, Mo.*, 289 F.3d 546, 552 (8th Cir. 2002))).

Though Lincoln made the decision to terminate Ferguson's employment *before* Dr. Paul made his comments, that timing did not render the comments irrelevant. Dr. Mahoney relied on the internal grievance panel's report and findings to uphold Ferguson's termination; she testified that, if the panel had found differently, she may have changed her decision. Thus, Dr. Paul was "in a position to influence [Dr. Mahoney,] the [ultimate] decisionmaker." For this reason, his comments were relevant and the trial court did not abuse its discretion in admitting them.

Lincoln's Point I is denied.

## B. The evidence was sufficient to support the jury's determination that Ferguson's age was a contributing factor in his termination.

In its second point, Lincoln argues that the trial court erred in denying its motion for directed verdict and motion for JNOV because Ferguson failed to make a submissible case that age was a contributing factor in the decision to terminate his employment. "The standards of review for denial of a motion for directed verdict and denial of a motion for judgment notwithstanding the verdict are essentially the same." *Hurst v. Kansas City, Mo. Sch. Dist.*, 437 S.W.3d 327, 336 (Mo. App. W.D. 2014) (quoting *DeWalt v. Davidson Serv./Air, Inc.*, 398 S.W.3d 491, 498 (Mo. App. E.D. 2013)). "To defeat either motion, the plaintiff must make a

8

submissible case by offering substantial evidence to support every fact essential to a finding of liability." *Id.* (quoting *DeWalt*, 398 S.W.3d at 498). "We view 'the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding evidence and inferences that conflict with that verdict.'" *Id.* (quoting *Sanders v. Ahmed*, 364 S.W.3d 195, 208 (Mo. banc 2012)). "This [c]ourt will reverse a jury verdict only where we find a complete absence of probative facts to support the jury's conclusion." *Id.*

"[T]he crux of a cause of action under [the] MHRA for age[-]related employment termination is that the defendant employer discriminated against the plaintiff employee by illegally and unfairly considering [the] plaintiff's age in making the decision to terminate." *Thomas v. McKeever's Enters., Inc.*, 388 S.W.3d 206, 214 (Mo. App. W.D. 2012). "It is the consideration of [the] plaintiff's age that constitutes the discrimination." *Id.*; *cf. Gokcen v. Babbitt*, 999 F.2d 542 (9th Cir. 1993) (holding that the ADEA requires more than mere consideration of employee's age; instead, the plaintiff must demonstrate some sort of animus or stereotyping to prove discriminatory motive).

> In the context of submissibility, then, a plaintiff makes a submissible case when he . . . presents sufficient competent evidence from which a reasonable trier of fact could find that it is more likely than not that (a) [the] plaintiff is in a protected age classification; (b) [the] defendant discharged [the] plaintiff; (c) the defendant's consideration of [the] plaintiff's age contributed to the decision to discharge [the] plaintiff; and (d) [the] plaintiff was damaged.

*Thomas*, 388 S.W.3d at 214. Lincoln challenges only the third element—that consideration of Ferguson's age contributed to the decision to fire him. Specifically, Lincoln argues that retirement discussions do not constitute evidence of age discrimination.

Even if Lincoln's assertion were correct (a matter discussed in further detail below), evidence of retirement discussions and consideration of Ferguson's retirement eligibility were not the only evidence supporting his claim. When Ferguson was terminated, he was advised that

9

his termination was the result of an "insufficient budget" and "budget constraints"; yet, Lincoln eliminated only two positions for a total savings of approximately $134,000 while, at the same time, issuing an across-the-board pay increase of 2% for a total cost of approximately $595,000. Additionally, Creagh—though initially indicating that the termination was due to "insufficient budget"—testified at trial that he chose to eliminate Ferguson's position because it was an "outlier" and because the department had only one employee. But Creagh never voiced these considerations before Ferguson's termination.

Evidence that an employer's explanation for its decision is "unworthy of credence" is one factor that "may well suffice to support liability." *Hazen Paper Co. v. Biggens*, 507 U.S. 604, 613 (1993). "Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Indeed, "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). And "upon such rejection, [n]o additional proof of discrimination is required." *Id*. (internal quotations omitted).

Nevertheless, the inference here is buttressed by the fact that the only two positions eliminated were occupied by individuals eligible for retirement benefits, which brings us to Lincoln's argument that retirement eligibility is not a proxy for age; thus, Lincoln argues, the fact that the only two positions eliminated were held by retirement-eligible individuals does not demonstrate that age was a contributing factor. We disagree.

In *Hazen Paper*, the United States Supreme Court addressed the question of whether "an employer's interference with the vesting of pension benefits violate[d] the ADEA." 507 U.S. at

10

608. In that case, the employer fired an employee just a few weeks before the employee reached the ten-year service mark required to vest in the employer's pension plan, but the employer offered to retain the employee as a consultant—a position not entitled to pension benefits. *Id*. at 607. The employee sued under the ADEA for age discrimination, arguing that his pension status was empirically correlated with age such that termination based upon his pension status constituted age discrimination. *Id*. at 607-08. The Supreme Court disagreed. *Id*. at 609. The Court noted that "an employee's age is analytically distinct from his years of service," pointing out that "[a]n employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, may have worked for a particular employer his entire career, while an older worker may have been newly hired." *Id*. at 611 (internal citation omitted). Because age and years of service are analytically distinct, the Court noted, "an employer can take account of one while ignoring the other[;] . . . thus[,] it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id*.

Lincoln relies on *Hazen Paper* to argue that retirement eligibility in this case cannot serve as a proxy for age just as pension status was not a proxy for age in *Hazen Paper*. There are several flaws in Lincoln's logic. First, the Supreme Court did not preclude the possibility that factors such as pension status and retirement eligibility might be considered a proxy for age in some cases. In fact, the Court noted that "[p]ension status may be a proxy for age" if "the employer . . . suppose[s] a correlation between the two factors and act[s] accordingly." *Id*. at 613. Second, the Court specifically noted that the pension system at issue in *Hazen Paper* was based *solely* on years of service, noting that it would be a different case "where an employee is about to vest in pension benefits as a result of his *age*, rather than years of service." *Id*. The retirement system available to Lincoln employees was based upon a combination of an

employee's age and years of service. Thus, unlike the pension system in *Hazen Paper* where the employer could "take account of [either age or years of service] while ignoring the other," *id*. at 611, Lincoln's retirement system requires consideration of *both* age and years of service, meaning neither can be ignored.

Though mere "inquiries into the retirement plans of an employee who is of retirement age do not rise to the level of age discrimination," *Stanley*, 263 S.W.3d at 804, when (1) the decision to terminate an employee is based upon an age-dependent factor (such as retirement eligibility), (2) the employer offers implausible alternate explanations for the termination, and (3) there is evidence that someone with the ability to influence the decision acted based on age-based stereotypes, there is sufficient evidence from which a jury can infer that age was a contributing factor to the termination decision. And even if the jury accepted that Lincoln had to eliminate positions because of budget constraints, "the decision as to [who] may be laid off in a reduction in force may not be made on the basis of age." *West v. Conopco Corp*., 974 S.W.2d 554, 557 (Mo. App. W.D. 1998). Here, there was sufficient evidence from which the jury could conclude that consideration of Ferguson's age was a contributing factor to Lincoln's decision to eliminate Ferguson's position.

Lincoln's Point II is denied.

## C. The court did not abuse its discretion in calculating attorneys' fees.

In its third point on appeal, Lincoln argues that the attorneys' fees awarded were excessive and should be reduced by half because Ferguson obtained only limited success and there was no evidence that the rate sought ($325/hour) was actually charged to Ferguson or received by his attorneys. In his cross-appeal, Ferguson raises a related point: he argues that the

12

trial court erred in failing to include the additional time spent responding to post-trial motions when calculating the attorneys' fees award. We will address these claims together.

Following the jury's verdict, the trial court entered a final judgment on the verdict on March 16, 2015. In that judgment, the court reserved Ferguson's right to timely seek attorneys' fees and costs as permitted by § 213.111.2.[5] Specifically, the court ordered "that all other claims, motions, or other prayers for relief are hereby dismissed, overruled, or denied; provided however, plaintiff shall be entitled to timely move for statutory fees and costs under Section 213.111.2 RSMo." On March 27, 2015, Lincoln filed a motion for judgment notwithstanding the verdict and for a new trial. On March 30, 2015, Ferguson filed a motion for attorneys' fees at a rate of $325/hour, along with costs associated with the action. In that motion, Ferguson requested $49,107.50 in attorneys' fees, representing a total of 151.1 hours of work. Ferguson then filed suggestions in opposition to Lincoln's post-trial motion, followed by a supplemental affidavit from counsel, requesting an additional $14,040 in attorneys' fees for the 43.2 hours spent responding to Lincoln's post-trial motion. On June 16, 2015, the trial court entered an order denying Lincoln's post-trial motion and awarding Ferguson "his reasonable costs and attorneys['] fees in the amount of $3,634.46 and $49,107.50 respectively."

One week after the court entered its order, Ferguson filed a motion to amend the order, suggesting that the court had inadvertently omitted the additional attorneys' fees incurred by Ferguson in responding to Lincoln's post-trial motion. The next day, the trial court entered an "Order and Final Judgment Amending Order Awarding Attorney's Fees," in which the court indicated:

> On June 16, 2015, the Court sustained plaintiff's motion for attorney's fees as the prevailing party and awarded fees to plaintiff of $49,107.50, together with costs of $3,634.46 for a total of $52,741.96. This order did not include fees for time

_____

[5] All statutory citations are to the Revised Statutes of Missouri 2000, as amended.

13

incurred responding to defendant's post-trial motion for JNOV and for new trial, 43.2 hours, as set out in the supplemental affidavit of Michael G. Berry, filed on April 21, 2015.

The court then purported to modify the June 16, 2015 Order "to include compensation for 43.2 additional hours, in the amount of $14,040.00 for total attorney's fees of $63,147.50, plus costs of $3,634.46, for a total of $66,781.96, with plaintiff to have final judgment against defendant in that amount."

"Prior to reaching the merit of the issues in this case, this Court must determine, sua sponte, if there is a final judgment." *In re Estate of Pethan*, 475 S.W.3d 722, 726 (Mo. App. W.D. 2015) (quoting *Ndegwa v. KSSO, LLC*, 371 S.W.3d 798, 801 (Mo. banc 2012)). "A final judgment is a prerequisite to appellate review." *Id*. (quoting *Ndegwa*, 371 S.W.3d at 801). "If the circuit court's judgment was not a final judgment, then the appeal must be dismissed." *Id*. (quoting *Ndegwa*, 371 S.W.3d at 801). "A final judgment resolves all issues in a case, leaving nothing for future determination." *Id*. (quoting *Ndegwa*, 371 S.W.3d at 801).

There appear to be two judgments in this case: the March 16, 2015 judgment on the jury's verdict and the June 24, 2015 judgment on attorneys' fees. Because "[t]here cannot be two final judgments in the same action," *State ex rel. Berbiglia, Inc. v. Randall*, 423 S.W.2d 765, 769 (Mo. 1968) (quoting *Irwin v. Burgan*, 28 S.W.2d 1017, 1021 (Mo. 1930)), we must discern what rulings of the trial court constitute the final judgment in this case for purposes of appeal.

The March 16, 2015 judgment did not resolve the issue of attorneys' fees. Case law is somewhat inconsistent regarding the issue of whether an unresolved request for attorneys' fees precludes finality of a judgment. *Compare Rheem Mfg. Co. v. Progressive Wholesale Supply Co.*, 28 S.W.3d 333, 343 (Mo. App. E.D. 2000) (determining that a judgment was *not* final because it failed to address the issues of attorneys' fees and expenses); *Hackathorn v. Four*

14

*Seasons Lakesites, Inc.*, 959 S.W.2d 954, 957-58 (Mo. App. S.D. 1998) (holding that a judgment was not final because it had not resolved a counterclaim for attorneys' fees); *with Boatmen's Trust Co. v. Sugden*, 827 S.W.2d 249, 252 (Mo. App. E.D. 1992) (holding that a judgment that had not yet resolved attorneys' fees *was* final, noting that "Under Rule 74.01(b),[6] a matter may become final and appealable if it could be the subject of a separate judgment."); *State ex rel. Hilburn v. Staeden*, 62 S.W.3d 58, 61 n.1 (Mo. banc 2001) ("[T]he pendency of the application for attorneys['] fees does not prevent entry of a final judgment."). Thus, it is unclear whether the March 16, 2015 judgment, standing alone, would constitute a final judgment. But this is an issue we need not decide, as the result will be the same regardless of whether the March 16, 2015 judgment is considered final.

Assuming the March 16, 2015 judgment could be considered final without addressing the question of attorneys' fees,[7] the trial court retained jurisdiction to "vacate, reopen, correct, amend, or modify its judgment within" thirty days.[8] Rule 75.01. "After the expiration of the 30 days provided by Rule 75.01, the trial court is divested of jurisdiction, unless a party timely files an authorized after-trial motion." *Spicer v. Donald N. Spicer Revocable Living Trust*, 336 S.W.3d 466, 468-69 (Mo. banc 2011).

> If a party timely files an authorized after-trial motion, the judgment becomes final at the earlier of the following:
>
> (A) Ninety days from the date the last timely motion was filed, on which date all motions not ruled shall be deemed overruled; or
> (B) If all motions have been ruled, then the date of ruling of the last motion to be ruled or thirty days after entry of judgment, whichever is later.

---

[6] All rule references are to the Missouri Supreme Court Rules (2016).
[7] If the judgment was not final without addressing attorneys' fees, then it was only when the trial court entered the June 24, 2015 judgment that all issues were resolved, creating a final judgment for purposes of appeal.
[8] If a court intends to alter its judgment under Rule 75.01, it must first "giv[e] the parties an opportunity to be heard" and have "good cause" for the alteration. Rule 75.01.

15

Rule 81.05(a)(2).

Here, Lincoln's motions for judgment notwithstanding the verdict or, alternatively, a new trial, were clearly timely, authorized post-trial motions. *See State ex rel. Eddy v. Rolf*, 145 S.W.3d 429, 433 n.2 (Mo. App. W.D. 2004) (recognizing that motions for new trial and motions for judgment notwithstanding the verdict constitute authorized post-trial motions for purposes of Rule 81.05). But it is not clear whether Ferguson's motion for attorneys' fees and costs constituted an authorized post-trial motion for the purpose of extending the trial court's jurisdiction. And, unlike the finality of the March 16, 2015 judgment, we must decide whether Ferguson's motion for attorneys' fees and costs constituted an authorized post-trial motion.

Normally, "[a] petition for attorney fees is not an authorized after-trial motion that serves to extend the time period for filing a notice of appeal." *Burton v. Klaus*, 455 S.W.3d 9, 12 (Mo. App. E.D. 2014). But the Eastern District of this court has held that, when a request for attorneys' fees is filed by a plaintiff pursuant to the MHRA, "[t]he trial court [is] well within its authority to treat this as a motion to amend under Rule 73.01 [now 78.04]." *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 114 (Mo. App. E.D. 2006) (quoting *Lippman v. Bridgecrest Estates I Unit Owners Assoc., Inc.*, 4 S.W.3d 596, 598 (Mo. App. E.D. 1999)). And, of course, a motion to amend the judgment is an authorized post-trial motion. *Eddy*, 145 S.W.3d at 433 n.2.

It appears that the trial court treated Ferguson's motion as a motion to amend, and, under the rationale in *Brady*, we see no error in that treatment. Under Rule 81.05, where timely, authorized post-trial motions are made, a court's jurisdiction extends to the earlier of either ninety days from when the last timely motion was filed (which, here, would be June 28, 2015—ninety days after Ferguson's motion for attorneys' fees and costs was filed) or, if all motions have been ruled, the date of ruling of the last motion. Rule 81.05(a)(2). On June 16, 2015, the

court purported to rule on all of the post-trial motions by denying Lincoln's motions and sustaining Ferguson's motion. Thus, it would seem that the trial court exhausted its jurisdiction on June 16, 2015, which would mean that the trial court's June 24, 2015 judgment was a nullity. The problem, however, is that merely "sustaining" a motion to amend a judgment is ineffective to actually amend the judgment.

To begin, the June 16, 2015 docket entry order, itself, does not constitute a judgment insofar as it is neither signed nor initialed by the judge. *See* Rule 74.01 ("A judgment is entered when a writing *signed by the judge* and denominated 'judgment' or 'decree' is filed." (emphasis added)); *Jackson v. Cannon*, 147 S.W.3d 168, 171 (Mo. App. S.D. 2004) (holding that docket entry did not constitute a judgment because it was unsigned). For that reason alone, it cannot constitute an *amended* judgment. More importantly, however, "a motion to amend the judgment is [not] 'rule[d] on' [for purposes of Rule 81.05 unless], within ninety days of its filing: (1) the motion is explicitly denied; (2) the trial court takes no action on it; or (3) an amended judgment is actually executed and filed." *In re Marriage of Noles*, 343 S.W.3d 2, 9 (Mo. App. S.D. 2011). Because the trial court did not issue an amended judgment reflecting its June 16, 2015 order sustaining Ferguson's motion for attorneys' fees and costs, it did not effectively "rule" on the motion for purposes of Rule 81.05 on that date. Accordingly, the court did not lose jurisdiction on June 16, 2015, as ninety days had not expired and it had not "ruled" on all timely, authorized post-trial motions.

The trial court entered a second judgment on June 24, 2015, in which it granted Ferguson $63,147.50 in attorneys' fees and costs, representing the total amount requested by Ferguson in both his original motion and his supplemental affidavit. Through this judgment—entered within ninety days of the filing of the last timely, authorized post-trial motion—the trial court

17

effectively ruled on Ferguson's motion for attorneys' fees and costs. Accordingly, it was at that time that a final judgment was rendered in the case.

It is true that, "[w]hen a judgment is once entered of record, it must stand as the judgment unless it is vacated, modified, or disposed of by some means provided by law[, and e]ntering additional judgments is not one of them." *Berbiglia*, 423 S.W.2d at 769 (quoting *Irwin*, 28 S.W.2d at 1021). But "the mere entry of an order denominated 'final judgment' does not require us to conclude that prior dispositive, albeit interlocutory, orders not mentioned in the judgment have been summarily vacated." *RLI Ins. Co. v. S. Union Co.*, 341 S.W.3d 821, 828 (Mo. App. W.D. 2011) (citing *Magee v. Blue Ridge Prof'l Bldg. Co.*, 821 S.W.2d 839, 841 (Mo. banc 1991)). "[I]f the combined effect of several orders entered in a case, including an order denominated 'final judgment,' is to dispose of all issues as to all parties, leaving nothing for future determination, then the collective orders combine to form the 'final judgment' from which an appeal can be taken." *Id*. "We will not construe an order denominated 'final judgment' as having the per se effect of vacating the trial court's previously entered dispositive orders unless the final judgment expresses the trial court's intent to do so, or unless the peculiar circumstances of the case permit no other reasonable conclusion." *Id*.

The June 24, 2015 order and final judgment made no mention of the March 16, 2015 judgment or any intent to vacate the existing judgment. As such, we view the combination of the March 16 and June 24, 2015 judgments as the "final judgment" in the case for purposes of appeal. The trial court did not abuse its discretion in setting the fee rate at $325 per hour.

Lincoln argues that the rate used by the court to calculate Ferguson's attorneys' fees ($325 per hour) was excessive for two reasons: (1) the average rate for the Jefferson City area is $220-250 per hour, and Ferguson offered no evidence that he was actually charged the higher

18

rate of $325 per hour; and (2) Ferguson achieved only limited success and his case lacked the complexity to justify a higher award.

Section 213.111.2 provides that "[t]he court . . . may award court costs and reasonable attorney fees to the prevailing party." "The MHRA specifically authorizes attorney fees for plaintiffs prevailing in discrimination suits . . . ." *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 630 (Mo. App. W.D. 2012). "The reasons are twofold: (1) to fully make the plaintiff 'whole' by compensating [him] for the costs of bringing suit, and (2) to deflect that discrimination suits may result in nominal or small monetary damages." *Id*. "The act recognizes the public purpose served by litigation that vindicates the rights of those who are discriminated against." *Id*. (quoting *Gilliland v. Mo. Athletic Club*, 273 S.W.3d 516, 523 (Mo. banc 2009)).

"The determination of reasonable attorneys' fees is within the trial court's sound discretion." *DeWalt v. Davidson Surface Air*, 449 S.W.3d 401, 405 (Mo. App. E.D. 2014). "We will not reverse that determination unless we find that the amount was arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Id*.

> While the determination of reasonable attorneys' fees under the MHRA is in the sound discretion of the trial court, there are . . . a number of factors to be considered: (1) the rates customarily charged by the attorneys involved in the case and by other attorneys in the community for similar services; (2) the number of hours reasonably expended on the litigation; (3) the nature and character of the services rendered; (4) the degree of professional ability required; (5) the nature and importance of the subject matter; (6) the amount involved or the result obtained; and (7) the vigor of the opposition.

*Id*. at 404. Of the factors, the most crucial is the degree of success obtained. *Id*.

Lincoln's first complaint is that $325 per hour is well above the average rate charged in the Jefferson City area, and Ferguson offered no evidence demonstrating that he was actually charged such an exceptional rate. But Lincoln's argument is misplaced for two reasons: first,

19

the trial court need not be presented evidence in order to fix the amount of attorneys' fees; and second, Ferguson did, in fact, present evidence in the form of affidavits, supporting the reasonableness of the rate charged.

"In the absence of a contrary showing, the trial court is presumed to know 'the character of the services rendered in duration, zeal, and ability.'" *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980) (quoting *Munday v. Thielecke*, 290 S.W.2d 88, 92 (Mo. 1956)). And because "[t]he trial court is considered to be an expert on the question of attorney fees," it "may 'fix the amount of attorneys' fees without the aid of evidence.'" *Id.* (quoting *Sebree v. Rosen*, 393 S.W.2d 590, 599 (Mo. 1965)). "The trial court is an expert on attorney's fees and does not require any evidence or other opinion as to their value." *Brewer v. Trimble*, 926 S.W.2d 686, 689 (Mo. App. S.D. 1996) (quoting *Schnucks Carrollton Corp. v. Bridgeton Health and Fitness, Inc.*, 884 S.W.2d 733, 740 (Mo. App. E.D. 1994)).

In any event, Ferguson presented affidavits from two separate attorneys suggesting that $325 per hour was a reasonable rate for a case of this type.[9] And, even assuming that Lincoln is correct regarding the prevailing rate for the Jefferson City area, "[t]he relevant market for attorneys in a matter such as this may extend beyond the local geographic community." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). "A national market or a market for a particular legal specialization may provide the appropriate market." *Id.* (quoting *Hendrickson v. Branstad*, 740 F. Supp. 636, 642 (N.D. Iowa 1990)). "To limit rates to those prevailing in a local community might have the effect of limiting civil rights enforcement to those communities

---

[9] Lincoln contends that the affidavits were biased insofar as the attorneys authoring them had pending cases against the same defense counsel and were acting in their own self-interest. The trial court apparently rejected this argument and, notably, was not the first court to grant a $325 hourly rate. *See Hill v. City of St. Louis*, 371 S.W.3d 66, 81 (Mo. App. E.D. 2012); *Phelps-Roper v. Koster*, No. 06-4156-CV-C-FJG, 2014 WL 4312899, at *6 (W.D. Mo. Sept. 2, 2014), *rev'd in part, vacated in part*, 815 F.3d 393 (8th Cir. 2016); *Barrett v. Claycomb*, No. 2:11-CV-04242-NKL, 2013 WL 6920860, at *2 (W.D. Mo. Dec. 9, 2013).

where the rates are sufficient to attract experienced counsel." *Id*. "Civil rights would be more meaningful, then, in those communities (large cities) where experienced attorneys can command their customary fees." *Id*. "This result would be in direct contravention of the purpose [to] diffuse enforcement through the 'private attorneys general' concept." *Id*. Furthermore, "[t]he prevailing market rate is only a starting point, . . . as the rate charged should also take into account the experience, skill, and expertise of the attorneys as well as the complexity, significance, and undesirability of the case." *Barrett v. Claycomb*, No. 2:11-CV-04242-NKL, 2013 WL 6920860, at *2 (W.D. Mo. Dec. 9, 2013). Ferguson's counsel had handled over 200 civil rights cases during his twenty-eight-year career and, because of his experience, was able to fully try the case with roughly only 150 billable hours.

Regarding the amount of success, Ferguson filed only one claim against Lincoln but was awarded the full amount of compensatory damages sought.[10] Lincoln offers no legitimate justification for its argument that Ferguson's level of success warrants a 50% reduction in the attorneys' fees awarded.

The trial court did not abuse its discretion is setting the hourly rate at $325 per hour. Lincoln's Point III is denied.

Ferguson's cross-appeal, which argues that the trial court's order of June 16, 2015, was erroneous insofar as it omitted the additional fees requested in Ferguson's supplemental affidavit, is moot. As noted above, the trial court's June 16, 2015 order was ineffective to rule on Ferguson's motion. It was not until the trial court entered the June 24, 2015 judgment that the

---

[10] The jury awarded Ferguson a total of $104,901.00 in compensatory damages.

court effectively ruled on Ferguson's request for attorneys' fees and costs. And, because that judgment included all of the relief Ferguson sought, his point on cross-appeal is moot.[11]

### Conclusion

The court did not err in admitting evidence, overruling Lincoln's motion for JNOV, or setting the rate for Ferguson's attorneys' fees request at $325 per hour. The judgment is affirmed but remanded for the purpose of allowing the court to assess reasonable attorneys' fees resulting from the appeal.

_____
Karen King Mitchell, Judge

Alok Ahuja, Chief Judge, and
Mark D. Pfeiffer, Judge, concur.

---

[11] Ferguson has filed a motion for attorneys' fees on appeal, as well. Though we have the authority to grant his motion, we are nevertheless remanding the matter of attorneys' fees on appeal to the trial court for its consideration.