**STATE of Missouri EX REL. Chris KOSTER, Attorney General, Respondent,**

**v.**

**KANSAS CITY BOARD OF POLICE COMMISSIONERS, Appellant.**

**WD 80209**

Missouri Court of Appeals, Western District.

OPINION FILED: August 15, 2017

Application for Transfer to Supreme Court Denied September 26, 2017

Application for Transfer Denied November 21, 2017

Patrick Mcinerney, Kansas City, MO, Counsel for Appellant.

Thomas Hiatt, Kansas City, MO, Co-Counsel for Appellant.

Robert Noland, Kansas City, MO, Counsel for Respondent.

Sarah Dobeck, Kansas City, MO, Co-Counsel for Respondent.

Kelly Willyard, Kansas City, MO, Co-Counsel for Respondent.

Before Division One: James Edward Welsh, P.J., Lisa White Hardwick, and Gary D. Witt, JJ.

James Edward Welsh, Presiding Judge

The Kansas City Board of Police Commissioners ("the Board") appeals the circuit court's judgment in favor of the Attorney General of the State of Missouri ("the State"), on the State's claims for declaratory judgment as to the parties' respective rights under section 105.726.4 RSMo,[1] of Missouri's Legal Expense Fund statutes. We affirm.

## Factual Background

The Kansas City Board of Police Commissioners ("Board") is an entity created by the Missouri Legislature (§§ 84.350-.860) to manage and operate the Kansas City Missouri Police Department. The Missouri Attorney General has a long history of providing the Board with legal representation under the Legal Expense Fund statutes, and, until 2013, did so without requesting attorney's fees.

On February 11, 2013, the State notified the Board that it would be unable to continue to provide legal representation without payment "of the reasonable expenses and charges that will fairly compensate [the State] for the costs of the representation," pursuant to section 105.726.4. Citing changes in its budget and fiscal position, reduction in office attorneys, and increased

---

1. Statutory references are to the Revised Statutes of Missouri (RSMo) 2016, unless otherwise noted.

caseload, the State advised that, on April 1, 2013, it would begin billing the Board $125 per hour for the Attorney General's representation.

In July 2013, the Board responded via email that it would not pay $125 per hour, but offered to pay an amount equal to the base salaries of the assistant attorneys general representing the Board. The State then informed the Board, in a letter dated September 24, 2013, that it would begin billing the Board at the rate of $125 per hour on October 1, 2013, but would not charge for certain incidentals. That letter recounted that the State and the Board "[had] had some discussions concerning the matter and manner of billing for services provided by Assistant Attorney Generals over several months and [had] been unable to come to a complete agreement."

In February 2014, the State began sending quarterly invoices to the Board requesting payment for legal services the Attorney General had provided since October 1, 2013. At a meeting in September 2014, the Board discussed the State's request for payment but did not approve payment of the amount requested (or any other amount). Throughout this dispute, the Attorney General has continued to provide legal representation upon the Board's request, as mandated by section 105.726.4.

On December 11, 2014, the State filed a petition against the Board alleging action on account and quantum meruit, in Counts I and II, arising out of attorney's fees owed by the Board under section 105.726. The State later amended its petition to add Counts III and IV, in which it sought a declaration of the parties' respective rights under section 105.726.4 and ancillary relief.

The parties filed stipulated facts and exhibits, which reflected the foregoing facts. The parties also stipulated that, since October 2013, the Attorney General had provided over 8,000 hours of legal representation to the Board. The parties agreed that the number of hours spent to represent the Board was reasonable and necessary; they did not stipulate as to the reasonableness of the requested hourly rate.

The parties thereafter filed cross motions for judgment. On June 27, 2016, the circuit court entered judgment for the Board on the State's Counts I and II, but found in favor of the State on Counts III and IV (the declaratory judgment counts), finding that section 105.726.4 obligated the Board to pay attorney's fees for the Attorney General's legal representation.

In September 2016, the circuit court held a hearing as to the reasonableness of the Attorney General's $125 hourly rate for attorney's fees. The State presented the testimony of the special counsel to the Attorney General and its deputy chief of staff in support of its claim that that rate is reasonable. On October 7, 2016, the circuit court entered judgment holding that the rate of $125 per hour for attorney's fees is reasonable. The Board appeals.

### Statutory Framework and Background

In 1983, the Missouri Legislature enacted §§ 105.711-.726, creating the State Legal Expense Fund ("Fund"), to replace the "Tort Defense Fund." *P.L.S. ex rel. Shelton v. Koster*, 360 S.W.3d 805, 809 (Mo. App. W.D.2011).[2] The Fund has been described as "a voluntary assumption of defense and payment [of claims] against State employee[s] sued for their conduct

**2.** "In 1967, the General Assembly enacted the Tort [Defense] Fund [§ 105.710], since repealed, which provided a state fund for payment of judgments against specified governmental officials 'for acts arising out of and performed in connection with their official duties[.]' " 20A Mo. PRAC., *Admin. Prac. & Proc.* § 13:7 n.107 (4th ed.).

arising out of and performed in connection with official duties on behalf of the state." *Dixon v. Holden*, 923 S.W.2d 370, 379 (Mo. App. W.D. 1996). The fundamental purpose of the Fund is

> to protect the covered employees from the burden and expense of civil litigation relating to the performance of their duties. The purposes are apparent. A competent employee, who is in demand elsewhere, may be unwilling to work for the state without protection. Those who do serve may be unwilling to take necessary risks for fear of litigation.

*Kershaw v. City of Kansas City*, 440 S.W.3d 448, 458 (Mo. App. W.D. 2014).

The Fund "consists of sums appropriated by the General Assembly and any funds otherwise credited to the Fund by certain departments pursuant to section 105.716." *P.L.S.*, 360 S.W.3d at 809; § 105.711.1. The assets in the Fund are intended "for the payment of any claim, or any amount required by any final judgment" against (1) "the State, or any agency of the State" (to the extent that the claim against the State is authorized pursuant to § 537.600, the sovereign immunity statute), and (2) "any officer or employee of the State or any agency of the State," as provided and as

limited in the statute. *P.L.S.*, 360 S.W.3d at 809; § 105.711.2.[3] Pursuant to the statutory scheme, "the attorney general is directed to investigate, defend, negotiate, and compromise any claims against state officers and employees covered by the statute." *Vasic v. State*, 943 S.W.2d 757, 759 (Mo. App. E.D. 1997) (citing § 105.716.1). Payments from the Fund are made by the commissioner of administration with the attorney general's approval. § 105.711.5.

In 2005, in *Smith v. State*, 152 S.W.3d 275, 278-80 (Mo. banc 2005), the Supreme Court examined the applicable statutes and held that the St. Louis Board of Police Commissioners and its police officers were entitled to coverage under the Fund, in that the Board was an "agency of the state," and its officers were "officers of the state," within the meaning of section 105.711.2.[4] The Court based its ruling on the fact that, in creating the Board, the legislature intended for it to operate entirely independently of the City of St. Louis. *Id.* at 278. By extrapolation, that ruling also applied to the Kansas City Board of Police Commissioners, which was established by the legislature in an almost identical fashion to the St. Louis Board.[5]

---

**3.** Section 105.711.2 states that the Fund provides coverage for lawsuits brought against:
   (1) The state of Missouri, or any agency of the state, pursuant to [§§ 536.050, 536.087, or 537.600];
   (2) Any officer or employee of the state of Missouri or any agency of the state, including, without limitation, elected officials, appointees, and members of state boards or commissions ... upon conduct of such officer or employee arising out of and performed in connection with his or her official duties on behalf of the state, or any agency of the state[.]

**4.** In *Smith*, members of the St. Louis Board and its police officers, who were named as defendants in lawsuits arising out of actions they had taken in their official capacities, brought a declaratory judgment action

against the State seeking a declaration that they were entitled to coverage under the Fund. 152 S.W.3d at 277. The circuit court granted summary judgment for the board members and officers, and the Supreme Court affirmed. *Id.*

**5.** "The St. Louis Board, along with the Kansas City Board, was established pursuant to legislation that was a direct state response to perceived problems of political corruption of the police forces in St. Louis and Kansas City." *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1087 n.8 (8th Cir. 2006). In 1939, the legislature created the St. Louis Board of Police Commissioners ("a type of body authorized in Missouri law only for St. Louis and Kansas City") via a statutory scheme that authorized the State to manage

*See Sherf v. Koster*, 371 S.W.3d 903, 906 (Mo. App. W.D. 2012) (citing §§ 84.350-.860).

That same year, in explicit response to *Smith*, the Missouri Legislature amended section 105.726 to limit (but not entirely eliminate) the Fund's obligations to the St. Louis and Kansas City Boards. *Id.*; *see* 2005 Mo. Laws S.B. Nos. 420 & 344, § A. Pertinent to this appeal, the legislature added subsections .3 and .4, which provide, in relevant part:

> 3. Moneys in the state legal expense fund shall not be available for the payment of any claim or any amount required by any final judgment rendered by a court of competent jurisdiction against a board of police commissioners established under chapter 84, including the commissioners, any police officer, ... other employees, agents, representative, or any other individual or entity acting or purporting to act on its or their behalf. Such was the intent of the general assembly in the original enactment of sections 105.711 to 105.726, and it is made express by this section in light of the decision in *Wayman Smith, III, et al. v. State of Missouri*, 152 S.W.3d 275. Except that the commissioner of administration shall reimburse from the legal expense fund the board of police commissioners established [in Chapter 84] for liability claims otherwise eligible for payment under section 105.711 paid by such board up to a maximum of one million dollars per fiscal year.
>
> 4. [I]f the representation of the attorney general is requested by a board of

police commissioners ..., the attorney general shall represent, investigate, defend, negotiate, or compromise all claims under sections 105.711 to 105.726 for the board of police commissioners ..., any police officer, other employees, agents, representatives, or any other individual or entity acting or purporting to act on their behalf. The attorney general may establish procedures by rules promulgated under chapter 536 under which claims must be referred for the attorney general's representation. The attorney general and the officials of the city which the police board represents ... shall meet and negotiate reasonable expenses or charges that will fairly compensate the attorney general and the office of administration for the cost of the representation of the claims under this section.

§ 105.726.[6] In short, the new law provided that Fund money "shall not be available for the payment of any claim or any amount required by any final judgment ... against a board of police commissioners" *except* to reimburse the St. Louis and Kansas City Boards for claims "up to a maximum of one million dollars per fiscal year." *Thomas v. St. Louis Bd. of Police Comm'rs*, 447 F.3d 1082, 1086 (8th Cir. 2006); § 105.726.3.

### Discussion

■ *In Point I,* the Board argues that the circuit court erred, as a matter of law, in granting judgment in favor of the State on the question of whether the phrase "reasonable expenses or charges," as used

---

and operate it and "imposed numerous requirements upon it." *Id.* at 1084; *see* §§ 84.010-.347. That same year, the legislature enacted similar statutory provisions creating the Kansas City Board and imposing similar requirements. *See* §§ 84.350-.860.

**6.** The adoption of Proposition A, 2012-88 on November 6, 2012, which authorized the City of St. Louis to begin to establish control over its own police force, resulted in changes to subsections .3 and .4 of section 105.726, to reflect that change in circumstances. It did not affect the statute's application to the Kansas City Board.

in section 105.726.4, requires the Board to pay attorney's fees for the Attorney General's representation, in that Missouri law "does not recognize a right to attorney's fees without express contractual or statutory authorization, *neither of which are present in this case.*" (Emphasis added.)

The circuit court correctly found that there *is* express statutory authorization for the payment of attorney's fees in section 105.726.4. That statute requires the Attorney General to defend claims against the Police Board, if requested, and also provides that:

> The attorney general and the officials of the city which the police board represents ... shall meet and negotiate *reasonable expenses or charges* that *will fairly compensate the attorney general* and the office of administration *for the cost of the representation* of the claims under this section.

§ 105.726.4 (emphasis added). In Counts III and IV, the State asked the circuit court for a declaratory judgment to clarify the rights of the parties under that subsection and to award attorney's fees owed by the Board.[7] The court examined the language of the subsection and declared that "the Board does owe reasonable expenses or charges, which includes attorney's fees, for the requested representation provided by the State to the Board." The court explained:

> The statute makes the rights and obligations between the State and the Board quite clear: the State must represent the Board in all claims under §§ 105.711 to 105.726 when such representation is requested by the Board, and the Board must pay reasonable charges or expenses including attorney's fees related to that representation.

The Board argues that section 105.726.4 authorizes the State to recoup incidental costs, fees, and other expenses incurred in representing the Board but *excludes* compensation for attorney's fees.

This claim involves the interpretation of a statute, which is a question of law that we review *de novo. Pearson v. Koster,* 367 S.W.3d 36, 43 (Mo. banc 2012). The primary rule of statutory construction is to determine legislative intent "by giving the language used its plain and ordinary meaning." *United Pharmacal Co. of Mo., Inc. v. Mo. Bd. of Pharm.,* 208 S.W.3d 907, 909-10 (Mo. banc 2006). "Where the language is clear and unambiguous, there is no room for construction." *Hyde Park Housing P'ship. v. Dir. of Revenue,* 850 S.W.2d 82, 84 (Mo. banc 1993). In assessing legislative intent, we look to statutory definitions or, if none are provided, to the text's "plain and ordinary meaning," which may be derived from a dictionary. *Gash v. Lafayette Cty.,* 245 S.W.3d 229, 232 (Mo. banc 2008).

The language at issue here is the phrase: "reasonable *expenses or charges* that *will fairly compensate* [the State] *for the cost of the representation.*" The terms "expenses" and "charges" are not statutorily defined. The dictionary defines "expense" as "the amount of money that is needed to pay for or buy something" and defines "charge" as "the price demanded for something." *Merriam-Webster,* http://www.merriam-webster.com/dictionary/expense and http://www.merriam-webster.com/dictionary/charge (last visited July 25, 2017). Black's defines "expense" as "an expenditure of money, time, labor, or resources to accomplish a result," and "charge" as a "price, cost or expense." BLACK'S LAW DICTIONARY (7th ed. 1999). All

---

7. Declaratory judgment is available to declare a party's rights, status, or other legal relations arising where a party's rights, status, or other

legal relations are affected by a statute. § 527.020.

of these definitions would encompass attorney's fees and certainly do not *exclude* attorney's fees.

More significantly, the statute predicates the definition of what constitutes an "expense or charge" on what is necessary to "fairly compensate the [State] for the cost of the representation." If the Board were obligated to reimburse only for incidental expenses (*e.g.*, deposition costs, expert fees, and court reporter expenses), as the Board suggests, the remaining statutory language would be rendered superfluous. We presume that every word, sentence or clause in a statute has effect and that "the legislature did not insert ... superfluous language." *Hyde Park*, 850 S.W.2d at 84. Mere reimbursement for incidental expenses would not "fairly compensate" the State for the total cost of representing the Board. To give full effect to the statutory language, the "cost of representation" must encompass and include charges for attorney time (which obviously is a significant cost of the representation).

We reject the Board's claim that the absence of the phrase "attorney's fees" in 105.726.4, while being included in 105.716.4, indicates that the former does not encompass "attorney's fees." Section 105.716.4 addresses payment of "costs of defense, including reasonable attorney's fees for retention of [outside] legal counsel." It governs what payments can be made *from the Fund* for all covered cases. Section 105.726.4 specifically governs what the Board is required to pay *to the State* for its legal representation. The use of the phrase "attorney's fees" in 105.716.4 in no way establishes that 105.726.4 *excludes* attorney's fees. Rather, as the circuit court noted, it actually demonstrates the legislature's recognition that the "cost of defense" *includes* "reasonable attorney's fees." *See* § 105.716.4.

In sum, the circuit court did not err in declaring that the Board owes reasonable attorney's fees *for its requested representation provided by the Attorney General*. Point I is denied.

■ The Board claims in *Point II* that the circuit court erred, as a matter of law, in finding that the communication between the Attorney General and the Board satisfied the requirement in section 105.726.4 that "the attorney general and officials of the city" must "meet and negotiate."

This claim again involves the interpretation of a statute, which we review *de novo*. *Pearson*, 367 S.W.3d at 43. The portion of section 105.726.4 at issue here is the requirement that that "[t]he attorney general and the *officials of the city* which the police board represents ... *shall meet and negotiate* reasonable expenses or charges" to fairly compensate the State.

The Board first contends that there was no "meeting." The statute does not define the terms "meet" or "negotiate"; thus, we look to the statute's plain and ordinary meaning, as found in the dictionary. *Gash*, 245 S.W.3d at 232. The dictionary definition of "meet" is "to enter into conference, argument, or personal dealings with." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/meet (last visited July 25, 2017). Black's Law Dictionary defines "negotiate" as meaning "to communicate with another party for the purpose of reaching an understanding" and "to bring about by discussion or bargaining." BLACK's, *supra*. The statute does not mandate any particular method of "meeting" or form of "negotiation."

Based on the stipulated facts, the circuit court found that the parties engaged in an ongoing discussion to reach an agreement as to the amount the Board owed under the statute. Citing the parties' seven-

month period of ongoing communications, the circuit court found:

> Here, beginning with the February 11, 2013, letter stating the State intended to bill the Board $125.00 per hour pursuant to Section 105.726, the parties began an extended negotiation to reach an agreement or understanding on the amount owed to the State by the Board under Section 105.726.4. On July 24, [2013], the Board countered the State's initial estimation of reasonable expenses and charges by offering to pay an amount equal to the base salaries of the assistant attorneys general representing the Board. On September 24, 2013, the State rejected the Board's suggestions and reaffirmed its belief that $125.00 per hour was a reasonable amount for reimbursement but did state it would not charge the Board for attorney's travel time, for paralegal time, or for overnight trips.

The circuit court noted that the September 24 letter also recounted that the parties "[had] had some discussions concerning the matter and manner of billing for services provided by Assistant Attorney Generals over several months and [had] been unable to come to a complete agreement." The court concluded that: "[T]he parties did in fact negotiate during the seven month period from February to September 2013 evidenced by the parties' attempts to reach an understanding on what the Board would owe to the State under Section 105.726.4."

The court is correct in finding that the parties engaged in discussions and negotiations for an extended period of time.

While the parties did not encounter each other face-to-face, they clearly engaged in conference, communication, and bargaining for the purpose of reaching an understanding, which is precisely what the statute requires. The circuit court did not err in finding that this satisfied the statutory requirement that the parties "meet and negotiate."

■ The Board also claims that these communications did not satisfy the statute, because "the Board employees [and the Police] Department's General Counsel," are not "officials of the city." Again, we disagree. The letters from the State to the Board were addressed to both the general counsel for the Police Department and the general counsel for the Board. The letters made specific reference to billing "your" Board. Counsel for the Board responded with an email refusing to pay $125 per hour and making a counter-offer. In so doing, counsel represented, and the State reasonably presumed, that counsel had the authority to negotiate on behalf of the City. As the circuit court noted, general counsel "did not advise the State that they lacked bargaining power during the negotiating process, and it appears from the correspondence sent by the Board ... that counsel for the Board did retain bargaining authority" on behalf of the City.[8]

In any event, the Mayor of Kansas City (clearly an "official of the city") is a voting member of the Board. § 84.350.1.[9] In February 2014, the State began sending quarterly invoices to the president of the Board requesting payment for legal services pro-

---

8. The stipulated facts do not reflect that counsel, or any other representative of the Police Department, Board, or City, ever questioned, prior to the lawsuit, whether the proper entities were involved in the negotiations.

9. That statute provides that "there shall be, and is hereby established, within and for

[Kansas City], a board of police commissioners to consist of four commissioners as provided in section 84.360, *together with the mayor* of [Kansas City], ... who shall be a voting member of the board." § 84.350.1 (emphasis added).

vided. At a meeting in September 2014, the Board discussed the State's request for payment of those invoices but did not approve payment. Thus, as a voting member of the Board, the Mayor was involved in the Board's negotiations with the State.

The circuit court did not err in finding that the communications between the parties satisfied the statute, and, thus, the Board is required to pay for legal services rendered pursuant to section 105.726.4. Point II is denied.

█ **In Point III,** the Board contends that the circuit court erred as a matter of law in finding that an hourly rate of $125 for the Attorney General's representation is reasonable, in that (1) the court "should have correlated any award of fees to the actual cost to the Attorney General of employing the attorneys representing the Board," and (2) the $125 hourly rate "would result in an unconstitutional windfall to the Attorney General."

█ The determination of what constitutes reasonable attorney's fees is within the trial court's discretion. *Ferguson v. Curators of Lincoln Univ.*, 498 S.W.3d 481, 496 (Mo. App. W.D. 2016). We will not reverse that determination unless we find an abuse of discretion, in that "the amount was arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Id.* at 497. The trial court is considered to be an expert on the necessity, reasonableness, and value of attorney's fees. *Travis v. Travis*, 174 S.W.3d 67, 71 (Mo. App. W.D. 2005). Thus, its decision as to the reasonableness of attorney's fees is presumptively correct. *Id.*

█ While the trial court "may fix the amount of attorneys' fees without the aid of evidence," *Ferguson*, 498 S.W.3d at 497, here, the State presented evidence at the hearing to establish that the hourly rate of $125 is reasonable. The State presented evidence that the Attorney General considered which division within the office handles Board matters, the cost of the attorneys' salaries and fringe benefits, and the hourly rates paid by other state agencies to the Attorney General for representation. The Attorney General's Special Counsel, The Honorable Ronald R. Holliger, testified that the attorneys in the litigation division who handle Board matters generally have more experience than other attorneys in the office. Deputy Chief of Staff Rhonda Meyer testified that the Attorney General charges an hourly rate to other professional boards for its legal representation, which is calculated using the same formula that the Attorney General used to arrive at the $125 hourly rate here. Meyer stated that, in addition to attorney salaries and fringe benefits, the office also bears expenses for facilities, transportation, IT support, computers, support staff, management, and other daily costs of operation.

Following the hearing, the circuit court found that the hourly rate of $125 is reasonable, in that the attorneys handling the Board's cases are more experienced, the time of support staff, supervising attorney, and division chief is not included, and "the rate is within the range of the rate usually charged by the Attorney General's office." We find no abuse of discretion in that determination. The State's evidence supported the finding that the requested hourly rate is reasonable and fairly compensates the State for its cost of representation.[10]

10. As to the Board's argument that the hourly rate should be limited to the actual salaries of the specific assistant attorneys general utilized, the circuit court found that "that is not required under the law." We agree; neither the language of section 105.726.4 nor the evidence presented at trial supports that argument.

We also reject the Board's claim that the relief sought by the State would violate article IV, section 21 of the Missouri Constitution (which limits the Attorney General's salary to that fixed by law), in that it would result in a windfall to the Attorney General. The focus of that constitutional provision is the state officer's *salary*. The Attorney General's salary is not *increased* by the "charges and expenses" (*i.e.*, attorney's fees) authorized by section 105.726.4.[11] The State presented evidence that any collected attorney's fees are deposited into the State Treasury as required by law. *See* § 33.080; Mo. CONST. art. IV, § 21.

The circuit court did not err in concluding that the requested rate of $125 per hour is reasonable under the circumstances of this case. Point III is denied.

### Conclusion

For the foregoing reasons, we affirm the circuit court's judgment.

All concur.

---

11. The Board's reliance on *State ex rel. Barrett v. Boeckeler Lumber Co.*, 302 Mo. 187, 257 S.W. 453 (Mo. banc 1924), is misplaced. The statute at issue in that case (§ 9675, RSMo 1919) expressly provided that the fee that was to be allowed the Attorney General was *in addition to* his salary. *Id.* at 454 (the legislative purpose of the statute was "to increase the compensation of the Attorney General"). Such is not the case here.